## Case No. 4,715.

### In re FEENY.

[1 Hask. 304;[1] 4 N. B. R. 233 (Quarto, 69).]

District Court, D. Maine. Oct.. 1870.

William L. Putnam, for petitioner.
Bion Bradbury, for respondent.

FOX, District Judge. This is a petition by James Hurley, the assignee in bankruptcy,. "that one Peter Smith may be adjudged guilty of a contempt, in violating the order of this court, passed on the 25th day of Dec.. last, enjoining him from foreclosing a mortgage on the stock in trade of said bankrupt,. or from commencing or prosecuting any suit for or on account of any claim by virtue of said mortgage, or from taking possession of said stock until the further order of the court." Notice of this petition has been given to said Smith, and he has filed a written. answer thereto, admitting that he has commenced an action of replevin for the stock,. but averring that the order of injunction had not been served upon him at the time he instituted the suit, and that he was not thereby in contempt.

On the hearing, it was shown that a petition was filed by said Hurley on the seventh. of December last against said Feeny, praying that he might be adjudged a bankrupt,. "for that he had given a preference to said Smith in fraud of the act [of 1867 (14 Stat. 517)], by mortgaging to him, Oct. 27, 1869, his stock in trade to secure sundry of his. notes then overdue and held by said Smith." A trial was had before the jury on this petition, and on the morning of Dec. 25th, a verdict was rendered in favor of the petitioner, and Feeny was thereupon adjudged a bankrupt. Smith was a witness at the trial,. was well aware of the cause for which Feeny was decreed bankrupt, and had previously consulted counsel in relation to it, Mr. Freeman of Cherryfield, where both parties re-

[1] [Reported by Thomas Hawes Haskell, Esq.,. and here reprinted by permission.]

sided. Freeman was also a witness in the trial of the petition against Feeny.

Freeman, having learned that a petition for an injunction had been or would be presented to the district court to restrain Smith from commencing any suit in the state court for the mortgaged property, or from taking it into his possession, on the morning of Dec. 25th advised Smith that they were endeavoring to serve notice upon him of the petition for injunction, that he might be summoned to appear before the court, and that he had better commence his suit of replevin at once in the state court, before the injunction should be served upon him; and it was agreed that Freeman should leave that noon for Cherryfield, to sue out and complete service of the replevin writ as soon as practicable.

The marshal was unable to find Smith, to make service upon him of notice of the application for an injunction, and the court being satisfied that he was endeavoring to avoid service of the notice, and that he was fully advised of the pendency of the petition, on the same day, under authority of the provisions of the 40th sec. of the bankrupt act, granted the injunction as prayed for, to continue until the further order of the court. Smith remained in Portland until noon of Dec. 27th, and from his own testimony, I find that he believed no injunction had been obtained against him Dec. 25th, and he therefore avoided the marshal who endeavored to find him to make service of the order upon him, and it was not legally served by the marshal, by a copy of the order, until Dec. 31st, at Cherryfield, at which time and place he was in possession of the mortgaged property, having taken the same on his writ of replevin issued Dec. 28, 1869.

The assignee, in March, obtained an order for the sale of the goods and demanded the same of Smith, who refused to surrender them unless his demand against Feeny was paid. The assignee then petitioned the court for an order on Smith for the delivery of them, and after notice to Smith of this petition, on the 26th of April a warrant issued to the marshal to take possession of the property and deliver the same to the assignee, which warrant has been executed and the goods since sold at public auction. Expenses have been incurred by the assignee in thus obtaining possession of the goods from Smith, and in the defense of the action of replevin.

The respondent was informed of the application for the injunction, and on the same day was satisfied and believed it had been ordered, and subsequently, he sued out his writ of replevin, took possession of the property, and retained the same from the assignee until the last of April, when it was surrendered by him to the officer. His counsel apparently have supposed that there was no virtue or effect in an order for injunction until the same was legally served on the party by the marshal, and that if he could secrete himself and avoid service of the order until the replevin writ could be obtained, that he would be justified in so doing, although he knew or believed the injunction had been ordered. This is a very grave mistake; and the rights of the assignee to an indemnity for the damages occasioned by the breach of the injunction cannot be in any way affected by the fact that the respondent acted under the advice of counsel. Hawley v. Bennett, 4 Paige, 163.

It was decided in the time of Ld. Hardwicke (Skip v. Harwood, 3 Atk. 565), that when a person is present in court and has notice of the decree, if he does any act in contravention of the decree, he is guilty of a contempt, and is punishable for it, notwithstanding the order is not drawn up. In Osborne v. Tenant, 14 Ves. 136, the defendant and his attorney were present in court when the motion was made for the injunction, but were absent when the order was granted. Ld. Eldon said, "I cannot attend to a distinction so thin as that persons standing here until the moment the Ld. Chancellor is about to pronounce the order, which from all that passed they must know will be pronounced, can, by getting out of the hall at that instant, avoid all its consequences." In Kimpton v. Eve, 2 Ves. & B. 349, an order for injunction was granted, the defendant by his affidavit admitted his belief that the order had been made, alleging that he acted by the advice of his counsel, who conceived that mere notice, without service of the injunction or order, had no effect. Ld. Eldon said, "In this case, the party admitting that he believed the order was made, the principle is the same, as if his belief was formed from information short of actual service." The party was adjudged guilty of contempt, and required to pay the costs. The same principle was again re-affirmed by Ld. Eldon in Vansandau v. Rose, 2 Jac. & W. 264, so that the rule in England now is, that a party is liable for breach of an injunction after notice of its having been obtained, although the order has not been served upon him.

This rule is equally well established in this country. It was adopted by the court in Hull v. Thomas, 3 Edw. Ch. 236; Waffle v. Vanderheyden, 8 Paige, 45; Haring v. Kauffman, 2 Beas. [13 N. J. Eq.] 399. In this latter case it is stated: "All that is required to enable the court to enforce obedience to its process, is that the defendant should have knowledge of the order for the injunction. The court may punish the violation of the order, though the injunction be not served, if it appear that the defendant knew of its existence." Hil. Inj. 141–143; 1 Smith, Ch. Pr. 623.

This respondent is clearly guilty of contempt by instituting his replevin suit after he believed the injunction had been ordered, and in taking and retaining the possession of

the property; by thus proceeding he has subjected the assignee to costs and expenses, to which he would not otherwise have been subject, and the assignee is entitled to an indemnity. If the parties cannot agree on the amount, it will be referred to the clerk to determine it. The only course at present is to adjudge the respondent in contempt, and leave the amount of fine open until the actual loss and cost to the assignee by reason of the misconduct is ascertained.

The claim for damages, by reason of the detention and loss of seasonable market of the goods, is not sustained by the evidence, and is not allowed. The replevin suit having been discontinued, the only indemnity which should be allowed on that account is the expense the assignee has incurred in defending against it. Decree accordingly.