# Court of Appeals.

*January,* 1886.

## PEOPLE *ex rel.* MUNSELL *v.* OYER AND TERMINER.

.(Reversing 3 *N. Y. Crim. Rep.* 208.)

### CRIMINAL AND CIVIL CONTEMPTS.

Contempts are divided into two classes: *First,* civil or private contempts, whose occasion is an injury or wrong done to a party or suitor before court, and which, and the action of the court in regard thereto, results in a money indemnity to the injured litigant, or a compulsory act or omission enforced for his benefit. *Second,* public or criminal contempts are those which are violations of the rights of the public as represented by their constituted legal tribunals, and where a punishment of the wrong is inflicted by the courts in the interest of the public. These latter contempts, in their nature, partake of the nature of crimes which are violations of the public law.

The people can cause punishment for a private or civil contempt, only when they seek to enforce a civil right or remedy which the misconduct tends to defeat or impede.

For a criminal contempt we may look only to the statute, but for a civil contempt we may resort, if need be, to the common law.

An act which is not a private or civil contempt, and which is not enumerated in the statute as a criminal contempt, is not a contempt at all, although it may be punishable as a misdemeanor.

During the trial of one S., the relator, who was a juryman, went to the scene of the alleged offense, for the purpose of acquainting himself with the locality. No order of the court was disobeyed. *Held,* that such act was not a criminal contempt.

APPEAL by the defendant from an order of the General Term in the first department of May, 1885, reversing an order of the Court of Oyer and Terminer of New York county, punishing the relator for a criminal contempt.

The facts appear in the report of the case at General Term, in 3 *N. Y. Crim. Rep.* 208.

*Randolph B. Martine,* district attorney (*De Lancey Nicoll,* assistant), for defendant, appellant.

*John Vincent* and *Ira Shafer,* for the relator.

FINCH, J.—The occasion and results of proceedings for contempt, furnish a clear and well-defined line of division separating them into two classes, which have become somewhat mingled and confused by the use of a fixed but ambiguous nomenclature. In re Watson, 4 *Lans.* 470. There may prove to be rare and exceptional cases which do not easily fall within either class, or some which so commingle the characteristics of both as to make their location doubtful and difficult; but in the main, the division is exhaustive and clear. In one class are grouped cases whose occasion is an injury or wrong done to a party who is a suitor before the court, and has established a claim upon its protection, and which result in a money indemnity to the litigant, or a compulsory act or omission enforced for his benefit. In these cases the authority of the court is, indeed, vindicated; but it is, after a manner, lent to the suitor for his safety, and vindicated for his sole benefit. The authority is exerted in his behalf as a private individual, and the fine imposed is measured by his loss, and goes to him as indemnity; and imprisonment, if ordered, is rewarded, not as a punishment, but as a means to an end, and that end the benefit of the suitor in some act or omission compelled, which are essential to his particular rights of person or of property. This clearly appears from the mode of enforcing the suitor's remedy prescribed by the statute. *Code of Civ. Pro.,* §§ 2284, 2285. A fine may be imposed to indemnify his actual loss. Where such is not shown, the fine must

not exceed his costs and expenses and two hundred and fifty dollars in addition thereto, and in both cases, to be paid over to the suitor. The imprisonment, where the act or duty can yet be performed, must end with the performance of the act and payment of the fine; but if the act or duty cannot be performed, then the imprisonment must not exceed six months and until the fine be paid. In this last provision there is a trace of the element of punishment, but it is for the violation of the private rights of the party and to check similar viola- tions in the future, and has no respect to public offenses or the vindication of public wrongs. The people may be such a party, but only when, like individuals, they are seeking a civil right or remedy which the misconduct complained of tends to defeat or impede; in other words, when they stand in the atti- tude of private suitors, seeking to enforce their private rights. If, in this class of cases, there exist traces of a vindication of public authority, they are but faint, and utterly lost in the characteristic which is strongly predominant of protection to private rights imperilled, or indemnity for such rights defeated.

These cases have been usually described as proceedings for the enforcement of civil remedies, and more briefly as civil con- tempts; and because the great volume of instances occur in the progress of civil actions; but they may also occur in criminal actions and proceedings, as we shall presently see, and consti- tute then what I imagine the learned counsel for the appellant had in his mind when he spoke of "*quasi* civil contempts." If we describe this first class of contempts as private contempts because their occasion and result is primarily and in the main the vindication of private rights, we shall avoid confusion or misapprehension.

The second class of contempts are those whose cause and result are a violation of the rights of the public as represented by their constituted legal tribunals, and a punishment for the wrong in the interest of public justice, and not in the interest of an individual litigant. In these cases if a fine is imposed its maximum is limited by a fixed general law, and not at all by the needs of individuals; and its proceeds when collected go into the public treasury and not into the purse of an individual

suitor. The fine is punishment rather than indemnity, and if imprisonment is added, it is in the interest of public justice and purely as a penalty, and not at all as a means of securing indemnity to an individual. Necessarily these contempts in their origin and punishment partake of the nature of crimes, which are violations of the public law, and end in the vindication of public justice, and hence are named criminal contempts. As described in the statute, an element of wilfulness or of evil intentions enters into and characterizes them. They are a disturbance of the court which interferes with its performance of duty as a judicial tribunal; wilful disobedience to its lawful mandate; resistance to such mandate wilfully offered; contumacious and unlawful refusal to be sworn as a witness, or to answer a proper question, and publication of a false and grossly inaccurate report of its proceedings. These cases and their punishment are placed under the head of "general powers of the courts and their attributes," and they very evidently relate to public offenses tending to cast discredit upon the administration of public justice, and having no reference to the particular rights of suitors. But here again we find that they occur as well in civil as in criminal actions, and so, for convenience, we may speak of them, in view of the present classification, as public contempts, although the established legal nomenclature must remain unchanged.

We have then two distinct classes, private contempts and public contempts, with which we are to deal for the purposes of this case. Both were known to and recognized by the common law, and the courts were held to possess an inherent power of punishing by process of contempt any disregard of their authority, both for the benefit of their suitors and for the protection of their own order and dignity. Necessarily the common law power was very broad and vested large discretion in the courts. These became, in some instances, both accuser and judge, and this was especially so where the contempt was of a public nature and no private person stood as complainant and sufferer. When the Revised Statutes were enacted an evident effort was made to codify the law of contempt and bring it within definite and fixed rules (1 *R. S.* 534, § 1; 278, § 10), and the effort plainly

recognized the difference between the two classes. The first, or private contempts, were described as those "by which the rights or remedies of a party in a cause or matter depending in such court may be defeated, impaired, impeded or prejudiced, in the following cases." After a very careful and specific enumeration it was still recognized that in the multitude of private rights other and unnamed cases might occur, and to meet that emergency subdivision 8 was added, which retained the power in "all other cases where attachments and proceedings as for contempts have been usually adopted and practised in courts of record to enforce the civil remedies of any party to a suit in such court or to protect the rights of any such party." By this clause the common law right as to private contempts was preserved outside of and beyond the statute enumeration, and this was deemed safe and prudent because in cases affecting only private rights and of wrongs done merely to the suitor the courts would be under little or no temptation to unduly strain or exercise their power. But the situation was entirely different as to public contempts. As to these the court contemned was the court which adjudged and punished, and that summarily and without the intervention of a jury. Here precise limitations were needed, and any shred or remnant of undefined common law power was deemed dangerous. And so the Legislature decreed that "every court of record shall have power to punish as for a criminal contempt persons guilty of either of the following acts *and no others.*" Observe the difference in the two acts founded upon the inherent difference between the two classes. The private or civil contempt might go beyond the statutory enumeration and draw in also what was usual or permissible at common law. But the public or criminal contempt was precisely defined and barred in by the statute enumeration. The phrase "and no others" implies that there were, or might be, other and non-enumerated offenses, answering the description or characteristics of public contempts, which, but for the statute, might be so deemed and punished, and all these it was affirmatively intended to shut out, at least until subsequent legislation should let them in. So that, for the criminal contempt, we may look only to the statute, while for the private or civil contempt we may

resort, if need be, to the common law. These two statutes have been substantially copied into our Codes. *Code of Civ. Pro.* § 14; *Id.* § 8; *Penal Code*, § 143. Outside of the criminal contempts enumerated there were very many offenses of that general character which could not be so punished, but were reached by making them misdemeanors and giving the culprit a trial before a jury; and any omitted case not covered by one or the other of these remedies may be easily met by further legislation. Other provisions of the Code, to which we have been referred, may have been enacted without keeping this classification in view, but if some confuse, none of them destroy it. By section 243 of the Code of Criminal Procedure a grand juror may be challenged as a minor, an alien, or insane, or as prejudiced and not impartial toward the party challenging, and by section 243 his attempt to serve is punishable as a contempt. It is not called a criminal or public contempt, and is not made such, but in its nature was evidently deemed an act which rather violated the private or particular right of the party challenging, and so belonged, as it was left by the Code, in the class of private contempts occurring in a criminal action. By section 344, and those which follow, a prisoner may apply to remove his case from a court in which the indictment is pending, and for that purpose may apply to a judge for a stay, but if the application is denied, a further appeal to another judge is forbidden and made punishable as a contempt. Here again the prohibited act respects primarily the private right of the accused, and is classed as a simple contempt and not denominated criminal. But since it does also respect public justice, and there is no suitor to be indemnified, it hardly belongs where it is placed, and some consciousness of this is evidenced by the further provision of the section that it shall also be punished as a misdemeanor. Section 619 makes disobedience to a subpœna, or refusal to be sworn or testify, a criminal contempt, and section 635 extends that to a conditional examination.

It seems to me thus entirely clear that an act which is not a private contempt, and is not enumerated among criminal contempts, is not a contempt at all, although it may be, and very often is, punishable as a misdemeanor. There is no difficulty

about the statute (2 *R. S.* Edm. ed. 759, § 14), to which the learned district attorney refers us, as making all contempts in civil cases applicable to criminal trials. The class of private contempts are so applicable where they in fact occur. The statute in question accomplished nothing, except to make the form and manner of proceeding adopted to punish contempts in civil cases apply to contempts on criminal trials, so far as in their nature applicable. It did not change the definition of contempts, or destroy or confuse the statute classification. People *v.* Restill, 3 *Hill,* 295. The extended application of the statute was intimated in the People *ex rel.* Hackley *v.* Kelly (24 *N. Y.* 78), but the essential characteristics of contempts were not confused or altered.

There remains to us the inquiry, whether the act of the juror in this case was a contempt at all. It is conceded that it was not a criminal contempt, because not one of those enumerated in the statute. It certainly was not a private or civil contempt, for it invaded no right of an individual suitor before the court, and involved no question or duty of indemnity to an individual litigant. On a criminal trial a verdict of acquittal was rendered which shocked the sense of justice, and aroused the indignation, of the learned trial judge. It then appeared that Munsell, one of the jurymen, had gone to the scene of the affray, for the purpose of acquainting himself with the locality. It is not alleged that he obtained any information. For that act he was committed for a contempt. On the face of the order it is recited, that he willfully disobeyed the command of the court. If that was true, there was a criminal contempt; but it is here conceded not to be true, and that no order of the court was disobeyed. Certainly this was not a private or civil contempt. It is said the people were a party and their rights were invaded, and so were to be protected. But the people were the public, and their rights were the rights of public justice, and the offense, if one at all, was a public offense. The phrase " to protect the rights of any *such* party," means a party entitled to " civil remedies " in his action, and wielding the power of the court for his private and personal benefit. It is true that in every criminal action the people, as parties plaintiff, have rights to be cared for in its

·progress. But these rights are generally of a public character, and respect the protection of society. As in private contempts there are traces of a vindication of public authority, so in public contempts there are indications of private rights, but, as in the other instance, lost and overwhelmed in the predominating characteristics of the class.

Upon a criminal trial there is often behind the people an individual complainant who has suffered in his rights of person or of property, and more or less interested in the prosecution; but he is not permitted to be a party; he must go elsewhere to redress his wrong; and it is not his right which is being enforced, but that of public justice with a view to the public safety. And the logical result of this must needs be that on a criminal trial a disrespect to, or defiance of, the court, which does not injure the private right of the accused, and calls for no vindication on his behalf, is either a criminal contempt or a misdemeanor, or both, but cannot be a private or civil contempt.

The distinction between the two classes of contempts was ·observed very soon after the statutes were passed.

In a civil action decided in 1831, which the appellant cites,* a party broke open books sealed up in the master's office, which was a contempt at common law. The chancellor said: "Upon my first examination of the Revised Statutes, I was inclined to think that the section which defines criminal contempts had deprived the court of the power of punishing the improper conduct;" and then he holds that it was a civil or private contempt within subdivisions 2 and 8, because it was a case in which the rights of the adverse party were materially involved.

We must not determine whether this juror was guilty of any offense whatsoever, for, if we shall assume that he was, for the sake of the argument, and that what he did was unlawful and prohibited, his act would have been a criminal contempt, but for the statute bar. It would have invaded no private ·right, no right of a mere suitor seeking a personal remedy for a wrong done him, but would have struck at public justice and the vigor and honesty of its administration; have been a disre-

---

* Dias *v.* Merle, 2 *Paige*, 494.

spect to the court, and a defiance of the public law, causing to miscarry a public prosecution. It is very certain that the learned trial court so understood and so dealt with it. The punishment adjudged was precisely the maximum of that fixed for criminal contempts, both as to the fine and imprisonment. There was no trace of indemnity to the people as plaintiff. Their costs and expenses were not ascertained or considered, or sought to be reimbursed. Nothing was meant but punishment for a public offense to be dealt with as such. The court said the extreme punishment permissible was inadequate, but should be imposed. But thirty days in jail and two hundred and fifty dollars fine was not the limit, if this was a civil or private contempt. In that case both might have been greater. And in imposing the penalty upon the juror, the court described it as "punishment for his misconduct." If there was a misconduct, the act would have been a criminal contempt but for the prohibition lodged in the words "no others." These words are meaningless on the theory of the prosecution; for, if the people are to be deemed like private suitors, and whenever their rights are infringed there may be a *quasi* civil contempt, and that punished as was this juror precisely as if guilty of a criminal contempt, the whole statute and its prohibition is a complete absurdity. The roads are open on both its flanks.

We cannot so construe it. We think the General Term were right in saying that the juror could not be punished for a contempt.

The order of the General Term should be affirmed.

All concur except MILLER, J., absent.