### FENLON *v.* DEMPSEY *et al.*

*(Supreme Court, Special Term, New York County.    October 9, 1889.)*

CONTEMPT—POWER TO PUNISH.

Under Code Civil Proc. N. Y. § 2285, relating to contempts, which provides that, "when the misconduct proved consists of an omission of an act or duty which it is yet in the power of an offender to perform, he shall be imprisoned until he has performed it and paid the fine," defendants, who willfully disobey a subpœna and order requiring the production of certain books, cannot be imprisoned for contempt upon the production of the books before the final order committing them is made.

At chambers. Action by John T. Fenlon against John Dempsey and John D. Carroll. Plaintiff moves to punish defendants for contempt. For former report, see 2 N. Y. Supp. 763.

*John McCrane* and *John L. Cadwalader,* for plaintiff.    *Louis P. Levy* and *Abram Kling,* for defendants.

O'BRIEN, J. The evidence in this proceeding fully sustains the conclusions reached by the referee, that it has been in the power of one or both of the respondents to produce, or cause to be produced, the books as directed at any time since they disappeared. There remains, therefore, to determine whether or not, in view of the production of the books, and the payment of the costs of the proceedings, the court has the power to inflict any additional punishment, and if so what? The *Munsell Case,* 101 N. Y. 245, 4 N. E. Rep. 259, in construing sections 8 and 14 of the Code relating to civil and criminal contempts, has, while clearly defining and pointing out the distinctions to be observed between these two kinds of contempts, decided that the private or civil contempt might go beyond the statutory enumeration, and include also what was usual or permissible at common law. But the public

or criminal contempt was precisely defined and barred in by the statute enumeration. In *King* v. *Barnes*, 113 N. Y. 477, 21 N. E. Rep. 182, it is said: "The main line of distinction between criminal and civil contempts is that the one is an offense against public justice, the penalty for which is essentially punitive, while the other is an invasion of private right, the penalty for which is redress or compensation to the suitor. But * * * behind criminal contempts often stood some trace of private rights, and in civil contempts was occasionally to be found the element of punishment merely as distinguished from the bare enforcement of a remedy." Here the facts would, before the production of the books, have justified the punishment of one or both of the defendants by fine or imprisonment, or both, as for a civil contempt; for, not only was it a willful disobedience of the court's orders, but such disobedience did impair, impede, and prejudice the rights of plaintiff. These acts of disobedience to the subpoena and order were involved on the motion to punish them for contempt, heard before Mr. Justice PATTERSON. After reaching the same conclusion upon the facts as herein expressed, he fixed the extent of their punishment in case they did not produce the books. Upon appeal this determination of Mr. Justice PATTERSON, to the extent of requiring them to pay the costs of the proceeding and be imprisoned for six months unless the books were produced, was affirmed by the general term, (2 N. Y. Supp. 763.) After paying the costs, had they, without waiting for the further motion to punish for contempt, produced the books, they, in view of Mr. Justice PATTERSON's decision, would no doubt be regarded as having purged themselves. It is evident that their conduct was shaped with a design to prevent the production of the books at any sacrifice short of being imprisoned. Before any final order committing them was made, they asked and obtained leave to appear and be allowed to produce the books, which they swore they had but lately found in a desk in their office. It is evident from the testimony that little credence should be given to such a story, and that the referee was justified in finding that the books were never lost, but seem to have disappeared about the time it was for Dempsey's interest that they should disappear, and they remained hidden until the respondents were adjudged guilty of contempt for not producing them.

It will be thus seen, from my view of the facts, that I regard the defendants, as did Mr. Justice PATTERSON, as having been guilty of a willful attempt to impede the course of justice.

The questions remain: Was not the punishment or penalty determined by Mr. Justice PATTERSON? and, the books having been produced, can or should they be further punished? The subpoena and order disobeyed required the production of the books. Section 2285 provides: "Where the misconduct proved consists of an omission to perform an act or duty which it is yet in the power of the offender to perform, he shall be imprisoned only until he has performed it and paid the fine." In construing this section Judge FINCH, in *King* v. *Barnes*, already cited at page 481, 113 N. Y., and page 183, 21 N. E. Rep., says: "This provision manifestly refers to a case in which the court has ordered an individual to perform some act or duty, to the performance of which some suitor has a right, and which is essential to his remedy." It is true in that case (*King* v. *Barnes*) the defendant was imprisoned for a contempt, but the ground upon which such imprisonment was sustained was, as stated at page 481, 113 N. Y., and page 183, 21 N. E. Rep., because "he was not directed to perform any act or duty at all. * * * It was not an omission to perform what the court had enjoined upon him, and which it was in his power to do, but it was an affirmative act of resistance to the process of the court,—an active effort to defeat its orders, and make its judgment nugatory,—'an unlawful interference' with an action or proceeding in the court." In that very case the officers of the company, who, under the direction of Barnes, refused to trans-

fer stock, as directed by the order, seemingly escaped imprisonment by finally doing the act commanded, as in the present instance, only when confronted with the alternative of a prison; or, as stated in that opinion, (page 480, 113 N. Y., and page 183, 21 N. E. Rep.,) before the final order was made "the officers of the company had grown sufficiently fearful of the possible consequences of their contumacy to yield obedience to the judgment and orders, and by so doing escaped imprisonment."

It is much to be regretted that the right and power of the court to punish by imprisonment as for a criminal contempt in a case like the present is in doubt, and that these defendants, after having repeatedly for two years set the court at defiance, having subjected a suitor to endless trouble and expense, can, at the last moment, by a performance of the act directed, escape imprisonment. Such, however, seems to be the reading of section 2285 of the Code, and the decision of *King* v. *Barnes, supra.*

This doubt as to the power of the court to imprison after the production of the books, and the adjudication Mr. Justice of PATTERSON already referred to, have inclined me to think that the proper disposition to make of this motion is to compel the defendants to pay costs and expenses to be taxed before me, and pay a fine of $250.

It is unnecessary to add that the motion to vacate the order of reference, or set aside the report of the referee, is denied, with costs.