DETERMINED IN THE

# THIRD DEPARTMENT

AT

# GENERAL TERM,

## September, 1894.

---

THE PEOPLE OF THE STATE OF NEW YORK ex rel. JOHN I. PLATT and
Another, Respondents, *v.* FRANK RICE and Others, Appellants.

*Contempt proceedings — punishment not limited by the relief asked for — former
decisions, when obligatory — what is a contempt — violation of a stipulation to
abide the decision of the Court of Appeals — force of an order during an appeal
therefrom — judicial knowledge of an order.*

Where an application is made for the punishment of a person for an alleged con-
tempt, without defining its character, it is for the court to determine, upon the
facts established, the nature of the offense committed ; although it is demanded
that such person be punished as for a criminal contempt, the court is not neces-
sarily confined to the form of relief or punishment demanded. (MAYHAM,
P. J., dissenting.)

Former decisions of the Supreme Court and of other courts are valuable, and
should be respected as guides to the action of the Supreme Court, but they
are not precedents to be followed by it, unless either the facts or principles
involved in them are similar to those of the case in which they are cited.

It is the disobedience of the order of the court which constitutes a contempt, and
not the failure to recognize the instrument by which it is enforced.

In an action in which an, order was obtained directing the issuance of a man-
damus, a stipulation was entered into by the parties interested providing that
an appeal be immediately taken therefrom, that no action be taken in the mat-
ter regarding which the mandamus was granted until the decision of the Court
of Appeals upon such appeal, and that such matter should then be acted upon
in accordance with the decision of the Court of Appeals. The decision of the
Court of Appeals was rendered about two o'clock P. M., and on the evening of
the same day action was taken in the matter, contrary to that directed by the
Supreme Court, before the issuance of a formal writ of mandamus, upon the
decision of the Court of Appeals, preventing such action.

*Held,* that the persons taking such action could not be permitted to shield them-
selves·from punishment for a contempt by setting up the fact that the formal
written mandate, issued to enforce the decision of the court, had not been issued,
if at the time of taking such action they knew what such decision was.

Parties who have knowledge of the granting of an injunction may be punished
for contempt in violating the same, although it has not been served upon them,
and the same principle applies to the violation of an order for a writ of
mandamus.

In the interval that elapses between the decision of the Court of Appeals and
the transmission of its decision to the Supreme Court, and the entering of an
order making such judgment the judgment of the latter court, the appellant
cannot lawfully do the act which was prohibited by the Supreme Court, when
such prohibition has been affirmed by the Court of Appeals.

An order of the Supreme Court, although an appeal be taken therefrom to the
Court of Appeals, still exists; the power of the court to enforce it is simply
suspended pending the appeal, and the party against whom it is issued is not
relieved from its mandate, although it is not enforcible against him until
after being passed upon by the Court of Appeals.

The Supreme Court at Special Term and at General Term will take judicial
notice of an order made by the Supreme Court in the proceeding pending before
it, and upon the argument of a case before the General Term it may properly
receive a certified copy of an order of the Special Term made in the action.

Mayham, P. J., dissenting.

Appeal by the defendants, Frank Rice and others, from an order
of the Supreme Court, made at the Columbia Special Term and
entered in the office of the clerk of the county of Albany on the 6th
day of April, 1894, adjudging them guilty of civil contempt and
fining them therefor, also an appeal by the relators, John I. Platt
and another, from so much of the said order as recites that the dis-
obedience therein set forth was not willful.

*J. Newton Fiero,* for the appellants.

*Edwin R. Leavitt,* for the respondents.

Herrick, J.:

This is an appeal from an order of the Special Term adjudging
the appellants guilty of contempt of court in disobeying an order
of the Supreme Court theretofore issued, and fining them the
amount of the relators' costs and expenses.

This case has heretofore been before this court (74 Hun, 179)
upon an appeal from an order refusing to grant an order to show
cause why the defendants should not be punished for contempt;
most of the material facts and the law relating thereto were dis-

cussed by this court in rendering its decision upon such appeal, and it is unnecessary to repeat them here.

The defendants made answer to the Special Term to the charges brought against them, and the Special Term has held that the facts show disobedience by the defendants to the order of the court, and adjudges them guilty of contempt, and I see nothing in the facts set forth in the case upon appeal that would warrant us in arriving at a different conclusion upon the facts than has the Special Term, unless it should be to hold that the defendants willfully and knowingly violated the order in question.

The appellants take exception to the findings of the Special Term in this, that it holds the defendants guilty of civil contempt only, whereas the relators move against the defendants as for a criminal contempt.

I do not think this contention of the appellants is well founded; the moving papers of the relators purport to set forth the alleged facts in the case, and ask the court to punish them for an alleged contempt, without defining the character. It was for the court to determine upon the facts the nature of the offense committed, and even if the relators had demanded the punishment of the defendants as for criminal contempt, that would not necessarily confine the court to the form of relief or punishment demanded; neither does it afford ground for relief to the appellants, if the court found that they were guilty of a lesser offense than the relators claim; the question really is, have the appellants been guilty of any form of contempt, civil or criminal?

I do not think that the answer of the defendants places them in any different situation from that in which they appeared when this case was last before us, except possibly in regard to the charge that they have willfully disobeyed the order of the court.

As before stated, the general questions, both of law and of fact, arising herein, were discussed upon the former appeal, and it is unnecessary to repeat such discussion here.

But there are some questions raised that perhaps were not disposed of at that time, which it is well to consider here.

The appellants contend that no mandamus was actually issued in this case, and that, therefore, they cannot be punished for not complying with its terms. I do not think that the appellants are in

position to raise any such question in this case. We have been cited to authorities bearing upon the appellants' contention in that behalf, but I do not think they are pertinent to the case now before us; former decisions of this and other courts are valuable and should be respected as guides to our action, but they are not precedents to be followed, unless either the facts or principles involved in them are similar to those of the case in which they are cited. None of the cases cited have any similarity to the case now here.

In this case the order of the court directing the issuance of a mandamus was granted, and then and there a stipulation was entered into by the counsel for the parties that an appeal be immediately taken; that the canvass of votes for senator in the district in question be suspended until the decision of the Court of Appeals upon such appeal, provided such decision should be made prior to December 30, 1891, and that the certificate of the result of the election should be made and issued by the appellants in accordance with the decision of the Court of Appeals.

It appears that the decision of the Court of Appeals was rendered about two o'clock in the afternoon of the twenty-ninth of December, and that the canvass of votes was made by the appellants during the evening of the said twenty-ninth day of December.

It will thus be seen that the defendants, by their own act in entering into the stipulation, rendered unnecessary, and, indeed, prevented, the issuance of the writ of mandamus originally, and by their precipitation in canvassing the votes on the evening of the same day of the decision of the Court of Appeals, they performed the prohibited act before a remittitur from the Court of Appeals could be issued and before an order of the Supreme Court making the judgment of the Court of Appeals the judgment of the Supreme Court, and directing the issuance of a formal writ of mandamus thereupon, would ordinarily, in the orderly and decent practice of the law, be accomplished.

Under such circumstances, it does not seem to me that the defendants can be permitted to shield themselves from punishment by the fact that a formal written document, which is issued to enforce the order and decision of the court, has not been issued, they knowing at the time what the decision and order of the court is.

It is the disobedience of the order of the court which constitutes

the contempt, not the failure to recognize the instrument by which it is enforced. In this case the order was that the returns in question should not be canvassed.

Again, the appellants assert that they should not be punished, because no order was in fact served upon them. As before stated in relation to the non-issuance of the formal writ of mandamus, it was rendered unnecessary by the stipulation entered into by them.

It is admitted that the appellants had knowledge of the order, and of its terms and conditions.

" In administering the law in respect to the violation of injunctions, the Court of Chancery never lost sight of the principle that it was the disobedience to the order of the court which constituted the contempt, and, therefore, although it required of the party availing himself of its order a substantial compliance with the rules of practice upon the subject, it would not usually allow the effect of its orders to be wholly lost when the party sought to be bound by the order had actual knowledge or notice of its existence, although there might have occurred some slip in the formal method of bringing it home to him." (*The People* v. *Sturtevant*, 9 N. Y. 263, 278.)

" This court has upheld proceedings in the Supreme Court punishing parties for contempt in violating an injunction, who had knowledge of it, though not served." (*Daly* v. *Amberg et al.*, 126 N. Y. 490–496, and cases cited. See, also, *R. H. & L. R. R. Co.* v. *N. Y., L. E. & W. R. R. Co.*, 48 Hun, 190 ; *Gage* v. *Denbow*, 49 id. 42.)

In *Hull* v. *Head* (3 Edw. Ch. 236) the defendant was held guilty of contempt where the court had issued an order for an injunction, although the order was not entered, or the process served.

It is true that these cases I have referred to are all cases of violations of injunctions, but I can see no difference in principle between the violation of an injunction, or of an order for an injunction and the violation of an order for a writ of mandamus ; the principle is the same ; it is the order of the court that has been disobeyed, and it has been brought equally into contempt, whether that order be for an injunction, mandamus, writ of prohibition, or any other writ or order which the court has power to grant or issue.

The appellants also contend that they cannot be punished, because at the time of the canvass of the votes the proceeding in which the order had been issued was not in the Supreme Court, but was in

the Court of Appeals, the remittitur not having been then filed, making the judgment of the Court of Appeals the judgment of the Supreme Court, and that, therefore, their action was not a violation of the order of the Supreme Court. Except for the prominence of the parties and their counsel who urge this, I should hardly be inclined to spend time upon it. The proposition that by appealing to the Court of Appeals, the person appealing may, in the interval that elapses between the decision of that court and the transmission of its decision to the Supreme Court, and the entering of an order making such judgment the judgment of the latter court, do the act which was prohibited by the Supreme Court, and such prohibition affirmed by the Court of Appeals, answers itself. To countenance such a proceeding would be a travesty of justice.

The order of the Supreme Court still exists, although it be taken to the Court of Appeals; the power of the court to enforce it is simply suspended pending the appeal; the party against whom it issued is not relieved from its mandate, although it is not enforcible against him until after being passed upon by the Court of Appeals.

Again, the appellants urge that there is nothing in the record to show that at the time the proceedings were taken to punish them for contempt, the principal proceedings were not still in the Court of Appeals, and that, therefore, there were no proceedings pending in the Supreme Court.

Upon the argument there was produced before us a certified copy order of a Special Term of the Supreme Court, held by the presiding justice of this court, on the 30th day of December, 1891, making the judgment of the Court of Appeals in this matter the judgment of the Supreme Court; such certified copy order, we think, this court had power to receive, for the purpose, if necessary, of sustaining the order appealed from. (*Day* v. *Town of New Lots*, 107 N. Y. 148, and cases cited.)

And in addition to that, it seems to me that the court at Special Term, as also this court, can take judicial knowledge of an order made by the Supreme Court in the same proceeding.

The order appealed from should be affirmed, with ten dollars costs and printing and other disbursements of this appeal.

PUTNAM, J., concurred.

MAYHAM, P. J. (dissenting):

Some of the questions argued on this appeal were considered and disposed of by this court on appeals taken from the orders of Justices EDWARDS and BARNARD, refusing to grant orders requiring the appellants herein to show cause why they should not be punished as for contempt for alleged disobedience of the order of the Special Term of December 7, 1891, reported in 74 Hun, 179. The facts set out in the answering papers on this motion were not before the court on that appeal, and so far as they vary the situation as then presented, they are entitled to be considered in the determination of this appeal.

The order of the Special Term of December seventh was based largely, if not entirely, upon the fact that the returns of the county canvassers of Dutchess county, then before the State canvassers, were signed by John Mylod, as secretary of the board of county canvassers, and not signed by the county clerk of Dutchess county, and such returns the order directed the canvassers to disregard, and instead thereof to consider only such returns from the county of Dutchess as might thereafter be filed containing the signature of the county clerk and issued under the seal of said county clerk. A careful examination of that order and of the facts upon which it was based seems clearly to indicate that the ground upon which that order was made was that the certificate was signed by Mylod and not by the county clerk.

That ground of objection to those returns was entirely removed by the decision of the Court of Appeals (*People ex rel. Daley v. Rice*, 129 N. Y. 459, 461), and when so removed the reason for disregarding the Mylod returns contained in the order went with it. Upon that question PECKHAM, J., in discussing the question of the sufficiency of the Mylod returns, says : " We think that under all the facts the steps taken to certify and authenticate the statements were valid, and the proceedings by which they were sent to and received by the Secretary of State and the other State officers were sufficient to entitle them to be filed and *considered* by the board of State canvassers as the properly certified result of the canvass of the board of county canvassers," and he concluded by saying : " We think as a result that the order for the writ and the writ itself should be modified by striking out the provisions requiring the return to be certified by and to come from the county clerk

of Dutchess county, and issued under his seal, and, as so modified, the order is affirmed."

Here, then, we have the decision of the Court of Appeals holding that the Mylod returns "*received by the Secretary of State and the other State officers were sufficient to entitle them to be filed and considered by the board of State canvassers.*"

It is true that the order required the State canvassers to disregard the Mylod returns. But what became of that requirement in the order after the explicit determination of the Court of Appeals? It may be said that that question was answered by this court when the case was before it on a previous appeal. But an examination of the record shows that many important facts were presented to the court, on the hearing of this motion, on the part of the appellants, which were not before the court on the application for an order to show cause, for a refusal to grant which the former appeal was brought, and which may well be considered in determining whether or not the appellants contumaciously violated the order of December seventh, as the same was modified by the decision of the Court of Appeals. Manifestly, the prohibitory part of that order which required the disregard by the canvassers of any return not signed by the county clerk was removed by the decision of the Court of Appeals modifying the order and allowing returns not signed by the clerk to be counted.

That left only the mandatory part of the order in force, which required the canvassers to consider such returns of the county of Dutchess as might thereafter be filed in pursuance of the statute or an order of the court, and to certify and declare the persons appearing upon such subsequently-filed returns to have received the greatest number of votes.

This mandatory part of the order for mandamus, as will be seen by an examination of the papers of the appellants used on this motion, had nothing upon which to operate. No returns from the county of Dutchess were thereafter received and filed in pursuance of the statute, or any order of the court. On the contrary, the clerk of Dutchess county was, by a valid and unreversed order of the court, forbidden and restrained from filing or attempting to file any further returns with the board of State canvassers.

The effect of the several orders which prevented the filing of any

other or further returns, was not considered on the former appeal, as they were not at that time before the court, but were first used and presented to the court on the hearing of the application to punish the appellants as for a contempt of court.

The first was an order made by Mr. Justice FURSMAN, dated December 14, 1891, directing the county canvassers of Dutchess county to show cause before the Special Term, to be held in the city of Brooklyn on the nineteenth day of December, why an order should not be made granting a stay, and among other things why an order should not be made directing the county clerk of Dutchess county to refrain from sending a certified copy of the statement of votes cast for the office of senator, and the order concludes in these words : " In the meantime let all proceedings under and by virtue of said order be stayed, and the said county clerk of Dutchess county is hereby ordered not to transmit any copy of said statement hereinbefore mentioned until the further order of this court." The motion directed to be made pursuant to this order to show cause seems to have been denied by Justice CULLEN, holding the Brooklyn Special Term on the nineteenth day of December, and either the order vacated or motion denied, and on the twenty-first of December an order of the Special Term sitting in the First district was granted, which was followed by two successive orders granted in the Third department, of which the following are copies :

" At a Special Term of the Supreme Court of the State of New York, held in and for the city and county of New York, at the Court House in the city of New York, on the 21st day of December, 1891.

" Present : Hon. GEORGE L. INGRAHAM.

" THE PEOPLE ex rel. EDWARD B. OSBORNE

*agst.*

THE BOARD OF SUPERVISORS OF THE COUNTY OF DUTCHESS, sitting as a Board of County Canvassers, etc.

" On reading and filing the affidavit of Delos McCurdy, the order made by Mr. Justice CULLEN, Dec. 19, 1891, and all the papers and

proceedings herein, it is ordered that the defendants, the Board of County Canvassers of Dutchess county, show cause before the Special Term in Kings county, at the Court House in Brooklyn, on the 23d day of December, 1891, at ten o'clock A. M., why the said order made by Mr. Justice CULLEN on December 19th, 1891, and entered in the clerk's office of the county of Dutchess on the 21st day of December, 1891, should not be vacated and set aside, and in the meantime and until the hearing and determination of said order, let all proceedings on the part of the defendants and of the county clerk of county of Dutchess be stayed, and said county clerk refrain from sending forward to the Board of State Canvassers the statement of the said Board of County Canvassers referred to therein. Service on or before the 22d day of December, 1891, shall be sufficient.

"GEORGE L. INGRAHAM.

"*Justice Supreme Court.*

"NEW YORK, *December 21st,* 1891."

"SUPREME COURT — ALBANY COUNTY.

"THE PEOPLE ex rel. EDWARD B. OSBORNE

*agst.*

THE BOARD OF STATE CANVASSERS OF THE STATE OF NEW YORK, and FRANK RICE, Secretary of State; EDWARD WEMPLE, Comptroller; CHAS. F. TABOR, Atty.-Gen.; ELLIOT DANFORTH, Treasurer, and JOHN BOGART, State Engineer and Surveyor, as members thereof, and each of them, and STORM EMANS, County Clerk of Dutchess County.

" On reading and filing the affidavit of Edward B. Osborne, and a stipulation made and entered into by Matthew Hale, of counsel, in the proceeding for a writ of *mandamus* against the Board of State Canvassers of the State of New York, together with the printed case on appeal from the order granting a writ of *mandamus* made on the 7th day of December, 1891, by which it appears that a return was made and filed by the county board of canvassers of

Dutchess county with the Board of State Canvassers of the State of New York, in and by which it appears that Edward B. Osborne, the relator herein, received a majority of votes cast for senator in the fifteenth senatorial district in the county of Dutchess, as shown by said return, and that a stipulation was made and entered into by and on behalf of the relators representing the interests of the persons opposed to the election of Edward B. Osborne as senator, in and by which it was agreed that the proceedings of the State Board of Canvassers relating to the canvass of votes for senator in the said fifteenth district should be suspended until the decision of the Court of Appeals upon such appeal, provided such decision should be made prior to December 30, 1891, and further providing that such canvass should be completed and the certificates of the result of election should be made and issued by the State Board of Canvassers in accordance with the decision of the Court of Appeals in the cases specified in the stipulation, the proceedings relative to the election of the said Osborne being one of said cases so submitted, and it further appearing that there has been a pretended copy of another return offered to be filed with the Board of State Canvassers, and that the county clerk of Dutchess county has in his possession another return made by the board of canvassers of Dutchess county, which is sought to be offered to be filed with the State Board of Canvassers in violation of such stipulation. Now, on motion of J. Newton Fiero, of counsel for Edward B. Osborne, relator, it is ordered that the Board of State Canvassers of the State of New York, and Storm Emans, county clerk of Dutchess county, show cause at a Special Term of this court, to be held at the Court House in the city of Albany on the 29th day of December at 11 o'clock A. M., why a writ of peremptory *mandamus* should not issue out of and under the seal of this court, commanding and requiring the said Board of State Canvassers to canvass the return of the board of county canvassers of the county of Dutchess, filed with it on or about the 23d day of November, in case the Court of Appeals shall reverse the order appealed from heretofore set forth, and declare the result of the election for senator in the fifteenth senatorial district in accordance therewith, and that Storm Emans, county clerk of Dutchess county, retain in his possession any other return made by such county canvassers, and refrain from filing, or

attempting to file, the same with the Board of State Canvassers, or any member thereof, it appearing that by reason of the fact that the canvass must be completed by the 30th day of December, that notice of eight days cannot be given to such board, and that shorter notice is necessary, and in the meantime let the said Storm Emans, county clerk, his agents or servants, be stayed from filing, or attempting to file, said return with such State Board of Canvassers, or any of them, and he is hereby forbidden from parting with the same or allowing it to be removed from his custody or control.

"STEPHEN L. MAYHAM,

"*Justice Supreme Court.*"

The proof shows that this order was made on the 23d day of December, 1891.

"At a Special Term of the Supreme Court held in and for the State of New York at the City Hall in the city of Albany, on the 30th day of December, 1891:

"Present: Hon. STEPHEN L. MAYHAM.

"THE PEOPLE ex rel. EDWARD B. OSBORNE

*agst.*

THE BOARD OF STATE CANVASSERS OF THE STATE OF NEW YORK, and FRANK RICE, Secretary of State; EDWARD WEMPLE, Compt.; CHAS. F. TABOR, Atty.-Gen.; ELLIOT DANFORTH, Treasurer, and JOHN BOGART, State Engineer and Surveyor, as members thereof, and each of them, and STORM EMANS, County Clerk of Dutchess County.

"An order to show cause having been heretofore made returnable in this matter at a term of this court appointed to be held at the City Hall in the city of Albany on the 29th day of December, 1891, at 11 o'clock A. M., among other things, why a writ of peremptory *mandamus* should not issue out of and under the seal of this court commanding and requiring Storm Emans, defendant herein, county clerk of Dutchess county, why he should not retain in his possession

any other return made by the county canvassers of Dutchess county than that heretofore filed, and refrain from filing, or attempting to file, the same with the Board of State Canvassers, or any member thereof, and the matter having been adjourned until this day; now, on motion of J. Newton Fiero, counsel for relator, Hon. Isaac H. Maynard, Deputy Attorney-General, appearing on behalf of the Board of State Canvassers of the State of New York, making no objection thereto, it is ordered that a peremptory writ of *mandamus* issue out of and under the seal of this court directed to Storm Emans, county clerk of Dutchess county, commanding and requiring him to retain in his possession any return made by the board of county canvassers of Dutchess county, other than that filed with the Board of State Canvassers, and refrain from filing, or attempting to file, any return now in his possession with the Board of State Canvassers, or any member thereof.

"STEPHEN L. MAYHAM,
" *Justice Supreme Court.*"

On the twenty-ninth day of December the Court of Appeals handed down its decision on the appeal from the order of the General Term, affirming in part the order of the Special Term of December seventh, and after the promulgation of the opinion of the Court of Appeals on the same day the appellants proceeded to canvass the Mylod returns, they being the only returns of the county canvassers of the county of Dutchess at that time on file in the Secretary of State's office.

No appeal seems to have been taken from the orders above set out, or either of them, nor does it appear that either of said orders has been set aside or modified. With these orders in full force and with affidavits used by the appellants in opposition to this motion, the case seems materially changed on this appeal from the manner in which it appeared on the former appeal.

The answer in this case to the moving papers on this motion consisted of a sworn statement, verified by the oath of each of the State canvassers, who are the appellants herein, by a separate affidavit of verification, which, in the most comprehensive way, and in detail, denies every allegation of fact set out in the moving papers tending to show any conspiracy on the part of the appellants or any contu-

macious violation of the order of the Special Term of this court, unless the canvassing of the Mylod returns, without the certificate of the county clerk of Dutchess county, was such violation; and the answer expressly sets up that according to the interpretation of appellants and that of the Attorney-General, the opinion and decision of the Court of Appeals did not prevent or prohibit the canvass of the Mylod returns; and in canvassing the Mylod returns, which was the only return presented to them as State canvassers, they and each of them acted in the utmost good faith in the discharge of a public duty, and interpreted the stipulation, opinion and decision according to their best judgment, after a careful examination and consideration of the whole matter, and they deny any disrespect to the court or its order or any intention to disobey or disregard such order.

The question argued on this appeal by the attorney for the appellants, to the effect that this court had not obtained jurisdiction of this matter by the filing of a remittitur from the Court of Appeals, making the judgment of that court the judgment of the Supreme Court, need not be considered here, as a majority of this court held adversely to that contention on a former appeal.

Nor need we consider here the effect of the stipulation by which the validity of the Mylod returns was submitted to and considered in the Court of Appeals. We are brought directly to consider the right, under all the circumstances of this case, to punish these defendants for an alleged contempt of an order of the Special Term, for a mandamus, which was modified on appeal and upon which no mandamus ever issued.

These appellants, acting as public officers, were, on the handing down of the decision of the Court of Appeals in the afternoon of December twenty-ninth, and on the verge of the expiration of their official terms, called upon first to interpret that decision and opinion and promptly to act in the discharge of their official statutory duty in canvassing the returns and declaring the result of that election, according to their best judgment, guided by the statutes, the orders and decisions of the court, honestly and in good faith. That proof on this motion shows that they did. That proof which appears by their return does not seem to be contradicted or challenged by any proof in the case, as most of the allegations of the relators are on

information and belief, and the court granting the order appealed from finds that the alleged disobedience to the order of December seventh was not willful.

Under such circumstances I do not see how the appellants can be adjudged guilty of a contempt of court.

The determination of this question involves grave and substantial rights and cannot be disposed of as a matter of sentiment. High public officials charged with the performance of important public duties are involved in this case, and while no position can give to an official immunity for violation of his public official duty, still, when called upon in the discharge of that duty to exercise judgment, he should not be held amenable to the summary process of the court in a proceeding to punish him for contempt without the most positive and convincing proof of his contumacious disregard of an order of the court which has in clear and unmistakable terms directed his action in a given case.

In the case at bar the order of the Special Term of December seventh had been modified by the Court of Appeals before the performance by the appellants of the act which is alleged as a contempt, so that that order as it was originally made was not in force, nor had any order embodying the decision of the Court of Appeals been made and served upon the appellants at that time.

There was, therefore, at the time of canvassing the return of Dutchess county by the appellants, no order of the court operating upon the State canvassers, directing their action, and consequently no order was violated by them.

Before a party can be adjudged guilty of a contempt for the violation of a writ or order of the court, it must be made to appear that the writ or order with the violation of which he was charged was served upon such party, or that with the knowledge of the existence of such writ or order he intentionally evaded or avoided the service of the same upon him.

In the case at bar no writ of mandamus ever issued, and consequently none was ever served. As we have seen, the order of the Special Term had been modified, and no modified order was made or served on the appellants at the time of making the canvass. The making of the canvass, therefore, was not a violation of any existing writ or order of the court.

The canvass was made on the 30th of December, 1891, and on the twenty-ninth of that month the Court of Appeals directed as follows : " It is ordered and adjudged that the order of the Special Term herein dated December 7th, 1891, and the order of the General Term affirming the same, and the same writ itself, be modified, by striking out the provisions requiring a return to be certified, to come from the county clerk of Dutchess county, and issued under his seal, and that the said order as appealed from as so modified be affirmed, without costs."

The case does not show, not is it contended, that any order modifying the original order or writ was ever served on the appellants, or either of them, and yet it must be conceded that the only order authorized in the case at the time of making the canvass, was the modified order as specified and directed in the order of the Court of Appeals.

The rule is universal and elementary that personal service of the original process claimed to be disobeyed is necessary to bring the party into contempt. (*Jones ex dem. Griffiths* v. *Marsh,* 4 T. R. [4 Durn. & East] 464; *Hollingsworth* v. *Duane,* 1 Wall. C. C. 141; Oswald on Contempt, 104; *Knight* v. *Carey,* 1 Cow. 39; *Ex parte Wallis,* 6 id. 581; *Holcomb* v. *Jackson,* 2 Edw. Ch. 620; *Bank of Utica* v. *Kibby,* 7 Cow. 148.)

It is true that article 3 of title 4 of the Code of Civil Procedure prescribes the method of serving papers in an action and authorizes in most cases service of a copy on the attorney of the party to be served, but section 802 in that article excepts papers to bring a party into contempt, leaving that class of papers to be served as the practice heretofore existed.

In *Sandford* v. *Sandford* (40 Hun, 540) it was held that a party cannot be regarded as guilty of a contempt for failing to comply with the directions contained in an order until a copy thereof has been served upon him. In *McCauley* v. *Palmer* (40 Hun, 39) it was held that in the absence of proof showing a service of the order upon the defendant personally, he could not be adjudged guilty of contempt for not complying with it. In that case Daniels, J., in delivering the opinion of the court, says : " To bring a party into contempt it is the practice of the court to require the order which he is charged with violating to be served personally upon him. This

is to be done by delivering to him a copy of the order, and at the same time exhibiting to him the original. The consequences of a contempt are serious and often severe in the punishment pronounced by the court, and before a party can be subjected to them, a strict compliance with the practice has been required to be observed.

" The object of the rule is to furnish the individual himself with an ample opportunity to understand the charge made against him, and prepare to meet it as best he may. It is a sound and salutary rule for the protection of the party, the observance of which cannot be dispensed with, and it has accordingly been held by the General Term, in this department, that the order the party may be charged with violating must be served personally upon him before proceedings can be successfully instituted and carried on to punish him for the contempt arising out of its disobedience."

And the judge cites in support of his opinion *Mayer* v. *Noll* (56 How. Pr. 214).

But it is insisted by the relators that the appellants were guilty of a contempt in violating the order of December seventh, and that the order was served by the delivery of a copy to each of the appellants. But the difficulty with that contention is that the order had no mandate addressed to the appellants. It only directed the issuance of a writ, which was to contain certain commands and conditions, and that writ was never issued or served on the appellants. The service of the order, while it was proper to give the appellants notice of the proceedings, and thus entitle them to appeal, or move to vacate, did not *per se* operate as a mandamus, or contain any direction or command enforcible against them, except through the operation of the writ, which it authorized. Any other construction would be giving to an order for a mandamus all the effect of the writ itself, and render the issuance of the writ unnecessary and nugatory.

No such practice could obtain, because to a writ of mandamus there must be a return, as required by sections 2073 and 2074 of the Code of Civil Procedure, and no return could be made to an order for a writ.

No writ having been issued in this case, there can be no contempt for a violation of the order, for the reason that the order only commands the defendants through the medium of the writ.

Before a party can be adjudged guilty of a contempt he must be served with the writ, and have the opportunity, under section 2075 of the Code, to make any of the motions indicated in that section or make or refuse to make a return to the same, and it is upon that return or refusal, or upon his refusal or neglect to obey the command of the *writ*, that he may be punished as for a contempt. The same is true of the modified order under the decision of the Court of Appeals. That decision required a modification of the order and of the writ. In that case, as in the original order of the Special Term of December seventh, no writ was ever issued or served. But as the modified order, which was directed to be made under the decision of the Court of Appeals, superseded the original order which it modified, so the writ, which was directed to issue under the original order, which was directed to be modified in accordance with that decision, superseded the writ directed to be issued by the original order.

Hence, the defendants could only be punished for disobedience to the command of the writ directed to be issued under the modified order, and that writ never issued. It was expressly held in *United States* v. *Kendall* (5 Cranch, 385) that : " Upon the affirmance by the Supreme Court of the United States of the judgment of the Circuit Court awarding a peremptory mandamus, and upon the receipt of the mandate of the Supreme Court commanding ' that such further proceedings be had in the court below as, according to right and justice and the laws of the United States ought to be had,' the court will not issue an attachment against the defendant for contempt in not obeying the former peremptory writ of mandamus which was superseded by the writ of error, but will issue an alias writ of peremptory mandamus."

The principle involved in the decision, the syllabus of which is quoted above, covers this case, although this case is much stronger for the appellants than that. In that case it does not appear that the judgment or order appealed from was modified on appeal. But it establishes the proposition that the decision on appeal supersedes the order appealed from, and that the liability of the party to be punished for contempt arises out of and must depend upon the order or decision of the appellate court.

But it is said that the defendants are estopped by their stipulation,

voluntarily entered into, from availing themselves of the position that no writ of mandamus was issued either under the order of the Special Term or the modified order directed by the Court of Appeals.

I cannot agree with that contention. I find nothing in that stipulation which renders these appellants amenable to punishment for an alleged violation of the mandate of the writ never issued, or of an order for the issuance of such a writ.

The entering into a stipulation before the writ was issued cannot take the place of the writ, especially when the stipulation made no provision for the issuance of such writ.

It is insisted by the learned counsel for the appellants that this is an application to punish a criminal contempt for a willful disobedience of an order of the court, and that when the Special Term reached the conclusion that the alleged disobedience was not willful the application should have been dismissed. It is quite apparent that the proceedings instituted for the punishment of the defendants for an alleged violation of the order of the court was for a criminal contempt under section 8 of the Code of Civil Procedure, the punishment for which is provided for in section 9 of the Code. That it was a proceeding under sections 8 and 9, above referred to, is manifest, not only from the petition and proof, but from the notice of motion upon which the proceedings were had at the Special Term, which notice is as follows:

"SUPREME COURT.

| |
|---|
| "THE PEOPLE ex rel. JOHN I. PLATT and Another<br><br>*agst.*<br><br>FRANK RICE et al. |

"Please take notice that hereto annexed is a copy of an order entered herein at the General Term of this court and filed in the office of the clerk of Albany county on December 21, 1893.

"And also hereto annexed are copies of the affidavits therein mentioned, the originals of which affidavits were filed in the office of the clerk of said county, as mentioned in the said order of the General Term, on the day therein stated.

"You will further take notice that upon your failure to show cause, as required by the said order of the General Term herein, a motion upon said affidavits will then and there be made, to wit:

"At a Special Term of this court, to be held in the county court house in the city of Hudson, in the county of Columbia, on the 13th day of January, 1894, at the opening of the court on that day, or as soon thereafter as counsel can be heard, for an order adjudging you, and each of you, respectively, 'in contempt of court, and imposing upon you, and each of you, respectively, a sentence of thirty days imprisonment in the county jail of Albany county, and a fine of $250, or such other sentence or fine as to the court may seem proper.

"Dated December 27th, 1893.

"Yours, etc.,

"LEAVITT, WOOD & KIETH,

"Attys. for the Relator.

"To Messrs. Frank Rice, Edward Wemple, Chas. F. Tabor, Elliot F. Danforth, John Bogart."

No claim for personal relief to the relators is made in this action or proceeding. The relators make the application only as citizens having a common interest with all other citizens having no personal claim to, or pecuniary interest in, the office of State senator, which was the subject leading up to this controversy. The punishment sought to be inflicted by the notice of motion was that prescribed in section 9 for offenses committed under the provisions of section 8 of the Code of Civil Procedure, which is a fine running to the people, and imprisonment as a punishment for an alleged offense against the people, and not one under section 14 of the Code, for indemnity to the party in a civil action, when the rights and remedies of the party are impaired or prejudiced in any of the cases mentioned in that section.

But it is answered to this contention that the notice of motion and papers set forth the facts, and that it was for the court to determine whether the facts justified it in finding either a civil or criminal contempt.

This, it seems to me, is too latitudinous a construction of the power of the court in a summary proceeding of this character,

involving the property, character and liberty of defendants, especially when the court is acting under statutory authority.

The party brought into court to answer in a proceeding of this character should be apprised of the character of the charge made against him not only, but should be tried only upon the charge made against him and required to defend only against such charge. The courts of this State have repeatedly recognized the distinction between civil and criminal contempts.

In *The People* v. *Cowles* (4 Keyes, 45) WOODRUFF, J., in delivering the opinion of the Court of Appeals, says: " The distinction between a commitment upon a precept issued for the disobedience of an order for the payment of a sum of money, and a commitment upon a conviction of misconduct, punishable by fine and imprisonment, is very clearly indicated in the statute, and has been repeatedly declared by the courts. The proceedings are unlike and the proceedings and penalties imposed different." " The process in the former case (civil) is strictly and purely remedial, in the latter (criminal) it is punitive and in most instances purely so."

In *The People ex rel. Negus* v. *Dwyer* (90 N. Y. 406) FINCH, J., in discussing the question of contempt, says: " The Revised Statutes distinguished and the Civil Code preserves the distinction between criminal contempt and proceedings as for contempt in civil cases." The court in this case holds that a willful violation of an order is a criminal contempt. In this case, as has been observed, the charge in the complaint and notice of motion is of a willful contempt.

The same distinction between civil and criminal contempt is recognized in *The People ex rel. Munsell* v. *The Court of Oyer and Terminer* (101 N. Y. 245) wherein Judge FINCH, in an elaborate opinion, points out the distinction in the proceedings, object and method of enforcement and punishing civil and criminal contempts. In *King* v. *Barnes* (113 N. Y. 480) FINCH, J., again in discussing the difference between criminal and civil contempts, says: " It is true, as we have elsewhere said, that the main line of distinction between criminal and civil contempts is that one is an offense against public justice, the penalty for which is essentially punitive, while the other is an invasion of private right, the penalty for which is redress or compensation to the suitor. But we also pointed

out this distinction, while marked and obvious, was not complete and perfect, since behind criminal contempts often stood some trace of private rights, and in civil contempts was occasionally to be found the element of punishment, merely as distinguished from the bare enforcement of a remedy."

It seems quite clear from the opinion of the Court of Appeals in this case, when the same was before it on a former appeal, that that court treated the relator as representing the general public and not any private person or private right. (*People ex rel. Daley* v. *Rice et al.*, 129 N. Y. 449.) I am, therefore, clearly of the opinion that these proceedings must be regarded as for a criminal contempt, which can only be sustained upon the theory and proof that the defendants willfully violated the order of the court, and that the learned judge at Special Term, on reaching the conclusion that the defendants had not willfully disobeyed the order of the court, should have dismissed the proceedings, and that it was error to compel the defendants to indemnify the complainants as private citizens for their costs, and that that conclusion is not changed by the recital in the order that the defendants' conduct was calculated to and actually did defeat, impair, impede or prejudice the rights and remedies of the relators, and that such recital cannot convert this into a proceeding to punish for a civil contempt. Clearly, if the court had imposed a fine under the notice of motion, such as is asked for in that notice, the relators had no claim personally against the defendants on which it could have been imposed under the provisions of section 14 of the Code of Civil Procedure. It was against a criminal contempt, therefore, that the appellants were asked to defend, and their successful defense of that entitled them to a denial of the motion. In *Sherwin* v. *People* (100 N. Y. 358) MILLER, J., in discussing the question of contempt, uses this language: "It should be averred and made to appear that the willful disobedience alleged was, within the terms of the statute, a direct and clear disobedience of the process or order of the court." In *People* v. *Gilmore* (26 Hun, 1) it was held that to warrant a punishment as for a criminal contempt the mandate, process or order must have been lawfully issued.

In *Sherwin* v. *People* (100 N. Y., *supra*) the court quotes with approbation the following language: "A solid and obvious distinction exists between contempts strictly such and those offenses

which go by that name, but which arc punished as contempts only for the purpose of enforcing some civil remedy."

Without pursuing the question involved in this appeal further, I am satisfied that, within the views herein expressed, the learned judge at Special Term erred in granting the motion, and that the order appealed from should be reversed, with costs.

Order affirmed, with ten dollars costs and printing and other disbursements.