*1838.*

HULL
*v.*
THOMAS.

the owner of one or more horses and carriages and other ve-
hicles, and also of a large quantity of household furniture and
other personal property—which said horses, carriages, vehicles
and household furniture are in his, the said John A. Moore's
actual possession. And your orators further show, that the
said John A. Moore buys and sells in his own individual name,
and makes out his bills of sale in his own name and takes
notes payable to his own order, and the name *John A. Moore*
is upon a large sign over the doors of said store."

---

HULL *v.* THOMAS, HEAD, and another.

---

An order for an injunction and receiver was granted ; and a person, who was
in court at the time, told the parties, against whom the order went, of it.
The parties then disposed of notes, which were the subject of the injunction
and receivership. *Adjudged* in contempt.

---

*Sept.* 25,
1838.

*Contempt.*
*Injunction.*
*Receiver.*

CO-PARTNERSHIP suit for an account, after a dissolution by
mutual consent. The complainant, with the defendants, John
Thomas and Samuel K. Head, had been the partners of the
firm. The bill alleged a sale of the stock in trade, by the de-
fendants John Thomas and Samuel K. Head, to the defendant,

James G. Wilson, without the consent and in fraud of the rights of the complainant.

On a notice of motion for an injunction and receiver, the court granted it as against the defendants Thomas and Head. They had received notes from Wilson for the sum of three thousand and nine hundred dollars ; and after the court had directed the entry of an order for a receiver and an injunction, but before the injunction or order for a receiver was served, the defendant, Samuel K. Head, got the defendant Wil son to discount the notes; and the other defendant, John Thomas, received part of the money. This appeared in the examination of Wilson before the master, on the appointment for a receiver ; as well as that Thomas and Head knew of the Vice-Chancellor's having granted an order for an injunction and receiver. The following is a part of James G. Wilson's testimony : " About the twenty-fifth or twenty-sixth of June I had a full settlement with Mr. Head. I think it was in the afternoon of the day after the motion for an injunction was argued. I was present at the argument. Mr. Head was not. I think I met him at the office ; and the arrangement was talked of that day, and the next day carried into effect. I told Mr. Head I had been at the Hall and heard the motion argued. Mr. Head did not seem to think a receiver could be appointed, and was surprised that the order for one had been made. I told him the result of the motion, at which he seemed to be disappointed. The result was, that Mr. Head wanted my notes taken up. He did not want them settled by a receiver. I was not exactly ready to do it. I paid him about one thousand one hundred dollars in a note of my own, on demand, and the balance in cash, he allowing the amount of the drafts I had already paid. The cash I then paid him was about one thousand dollars. He made a deduction of three per cent. a month on the twelve hundred dollar note for the time it had to run. I do not know what has become of the eleven hundred dollar note. I have not paid it. Head and Thomas both knew that the motion had succeeded for an injunction ; and that a receiver would be appointed. I told them I had heard the Vice-Chancellor's decision. They talked about the argument before it took place ; went to the chancellor, who told them they

1838.

HULL
*v.*
THOMAS.

must employ a lawyer; and knew that the motion was to be for a receiver and an injunction."

The parties were brought before the court on an attachment.

*Mr. William C. Russell*, for the complainant.

*Mr. Dresser*, for the defendants.

The Vice-Chancellor :—The question is, whether the defendants are guilty of a contempt, in having known that an injunction was to issue and a receiver to be appointed, although the order was not entered or the process served.

In *Osborne* v. *Tenant*, 14 Ves. 136, a motion was made for an injunction, while the defendant and his attorney were in court; but they were absent when the order was pronounced. "If these parties," said the Lord Chancellor, "by their attendance in court were apprised that there was an order, that is sufficient; and I cannot attend to a distinction so thin, as that persons standing here until the moment the Lord Chancellor is about to pronounce the order, which, from all that passed, they must know will be pronounced, can, by getting out of the hall at that instant, avoid all the consequences." In *Kimpton* v. *Eve*, 2 Ves. and B. 348, the defendant had notice in writing that an order for an injunction was granted; and the court held him in contempt. Lord Hardwicke had set the example for these decisions: see *Skip* v. *Harwood*, 3 Atk. 563; *Anon.*, Ib. 567.

These parties acted contrary to the order which the court pronounced, after they had been told of it by the defendant James G. Wilson. They realized money upon the notes, in order to defeat the object of the order. They must be adjudged guilty of a contempt; and as the matter is before me on their answers to interrogatories, the court ought, under the statute, to render a judgment by way of indemnity to the aggrieved party. However, it is difficult, in the present stage of the cause, to say what damages the complainant has sustained. The amount which belongs to him out of the proceeds of the partnership cannot now be ascertained, except upon a reference to state the accounts. I believe the only course to take at present, is to adjudge the parties in contempt; and to

leave the amount of fine open until a master's report can be obtained, showing his actual loss and damage, by reason of this misconduct.