JOHN G. UNDERHILL, Respondent, *v.* JOSEPH M. SCHENCK and RICHARD G. HERNDON, Appellants, Impleaded with JACINTO BENAVENTE, Defendant.

Second Department, April 17, 1922.

Unfair competition — action to restrain defendants from producing motion picture of Spanish play, " La Malquerida " under title, " The Passion Flower " and for damages — plaintiff, who had right to translate and adapt play into English, granted defendant H. right to produce his translation of play but reserved motion picture rights — play produced under title, " The Passion Flower "— defendant H. acquired from Spanish author world motion picture rights — defendant H. granted to defendant S. motion picture rights in Spanish play and also in English translation entitled, " The Passion Flower "— plaintiff refused to consent to said transfer — making and production in motion pictures of play under title, " The Passion Flower " was unfair competition with the production of the spoken drama under the same title — original author could not give right to use play in motion pictures in competition with spoken drama — defendants H. and S. both liable — plaintiff entitled to damages as well as to accounting for profits — profits include profit made on sale by defendant H. to defendant S.— defendants should be restrained only from using title, " The Passion Flower."

It was unfair competition, giving the plaintiff right to injunctive relief, for the defendants to produce in motion pictures the Spanish play " La Malquerida " under the title of " The Passion Flower," where it appeared that the plaintiff acquired from the original author the sole right to translate and adapt the play into English and to perform it in that language; that the plaintiff translated the play into English and, under a contract with the defendant H., which reserved motion picture rights in the play, it was produced on the American stage under the title, " The Passion Flower; " that thereafter a third person purchased from the original author the world motion picture rights in the play and transferred the same to the defendant H, who in turn sold the rights to the defendant S. under an agreement whereby H. was to secure the consent of the plaintiff to use the title, " The Passion Flower," and that, though the plaintiff refused to

consent to the use of the title, the defendant S. produced a motion picture of the play under that title.

The original author of the play did not have the right, after his grant to the plaintiff of the right to translate and produce the play in the English language, to use the play in motion pictures or grant the right to use it to others in competition with the spoken drama.

The defendants' liability does not depend upon their violation of a copyright but upon the production of a motion picture of the drama under the same title adopted by the plaintiff for the spoken drama.

The transfer by H. to and the use by S. of the title, " The Passion Flower " with full knowledge of plaintiff's rights was, at least, a constructive fraud and entitles plaintiff to an injunction and also to damages and an accounting for all profits realized by the defendants, and the mere fact that H. sold the motion picture rights and took no part in the production by S. constitutes no defense, for his acts were essentially a part of the illegal transaction which resulted in plaintiff's injury.

The plaintiff is entitled to recover both damages and profits arising from the illegal use of the title to the play, and the profits to be accounted for are not simply those arising from the production of the motion picture but should include any profit which H. derived from the sale of his rights to S.

The defendant should not be restrained from producing any motion picture of said play with lines, titles or captions in the English language but simply from the production of the play " La Malquerida " under the title " The Passion Flower."

BLACKMAR, P. J., and KELBY, J., dissent in part, with opinion.

APPEAL by the defendants Joseph M. Schenck and another, from an interlocutory judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 4th day of June, 1921, upon the decision of the court rendered after a trial at the Kings Special Term.

*Almet F. Jenks [Gustavus A. Rogers, Tudor Jenks* and *Henry A. Uterhart* with him on the brief], for the appellant Joseph M. Schenck.

*Elijah N. Zoline,* for the appellant Richard G. Herndon.

*Paul Bonynge,* for the respondent.

YOUNG, J.:

The plaintiff claims an exclusive right and property in the title " The Passion Flower " as applied to a dramatic production. He seeks to restrain the defendants Schenck and Herndon from producing motion pictures of the play under that title and to recover damages.

The defendant Jacinto Benavente, a noted Spanish dramatist, about 1914 wrote a play entitled " La Malquerida." Its production upon the stage was highly successful, and upwards of 2,000 performances were given in Spain and Spanish-speaking countries. Benavente copyrighted the Spanish version of this play in the

United States in March, 1914. In 1916 he granted to plaintiff the sole right to translate and adapt the play into English and to perform it in that language. Plaintiff translated this and other plays of Benavente's, and in May, 1917, they were copyrighted and published by Charles Scribner & Sons. The literal translation of " La Malquerida " is " The Ill Beloved." Plaintiff deemed this title ill adapted to a popular success, and the use of the title " The Passion Flower " arose from a free translation by plaintiff of a stanza in the Spanish version in which he made use of this phrase. Throughout the translation it is treated as the equivalent of " La Malquerida," although it is not a literal translation of anything in the play. Plaintiff suggested the use of this title to Scribners in the translation, but was dissuaded from so doing. On January 2, 1920, an agreement was made between plaintiff and defendant Herndon, wherein the former (described as " the proprietor ") granted to the latter (described as " the manager ") the sole right to produce plaintiff's translation of the play in the United States and Canada, for the term of the copyright and any renewals thereof, and Herndon agreed to pay as royalties therefor five per cent of the first $4,000, seven and one-half per cent of the next $3,000 and ten per cent of the excess above $7,000 of the gross weekly income. This agreement further provided that no rights to the production of the play in motion pictures were conveyed.

Under this agreement the play was first produced in English in New York with Miss Nance O'Neil in the leading role, on January 9, 1920, and was a success. At the time of the trial upwards of 450 performances had been given in the city of New York and elsewhere throughout the United States. It has always been produced under the title " The Passion Flower," and is well known under that name.

Thereafter Herndon solicited from plaintiff the world motion picture rights of the play, and in February, 1920, a tentative written agreement was made between them, subject to the consent of the author Benavente, providing for the joint ownership of plaintiff and Herndon of such rights, and for an equal division between them of the profits. On April 1, 1920, plaintiff wrote Benavente for the picture rights. Benavente replied April 26, 1920, that he had already sold them. This sale was to George Gonzalez through a Paris agency on March 20, 1920, for about $800. On June 5, 1920, plaintiff through his attorney returned Herndon's check for $500 and the tentative agreement was thus abrogated. On the same day Herndon obtained from Gonzalez through his representative in this country, an assignment of Benavente's contract granting the exclusive world motion picture rights for $2,000.

On October 13, 1920, Herndon sold the motion picture rights to the defendant Schenck for $25,000 under a written agreement in which he granted not only such rights in the Spanish play, but also in the English translation made by plaintiff entitled " The Passion Flower," and agreed within sixty days to procure from plaintiff his written consent to the use of that title. The agreement also provided that Schenck should use the name of the author in his paid publicity and state upon the film itself for exposure long enough to be read that the motion pictures were based upon a play written by the author and translated by plaintiff.

Herndon thereafter attempted to secure from plaintiff his consent to the use of his translation and the title " The Passion Flower " in connection with the motion picture production, but plaintiff refused, and such consent has never been obtained.

In December, 1920, announcement in the press appeared of a motion picture production of " The Passion Flower " by Schenck with Miss Norma Talmadge in the title role, and the plaintiff thereupon notified Schenck of his exclusive right and property in the title " The Passion Flower," but Schenck nevertheless produced the picture, and plaintiff brought this action.

The trial court rendered a decision in plaintiff's favor, by which it is found, among other things, that the grant by Benavente to Gonzalez and by Gonzalez to Herndon of the motion picture rights, and the agreement between Herndon and Schenck were void; that the defendants Schenck and Herndon have attempted by unfair means to take away plaintiff's rights in the play; that the receipts from the spoken drama have been largely reduced by the motion picture production, and the plaintiff's royalties lessened, and that plaintiff suffers irreparable loss and damage.

The interlocutory judgment entered upon this decision restrains the defendants from announcing, advertising or exhibiting any motion picture reproduction of the play " La Malquerida " under the title " The Passion Flower " and any motion picture reproduction of said play with lines, titles or captions in the English language; decrees a recovery by plaintiff from defendants Schenck and Herndon of his damages and an accounting by said defendants of profits and appoints a referee to take and state an account of the profits and of plaintiff's damages.

In considering the questions involved in this case, the right asserted by plaintiff must not be confused with any right of literary property which he might claim as an author either under the copyright statutes or at common law. As to the play, no common-law rights survived its publication and copyright (*Palmer* v. *DeWitt*,

4

47 N. Y. 532; *O'Neill* v. *General Film Co.*, 171 App. Div. 854); and, of course, no relief against infringement of the copyright can be had in the State courts. (See Judicial Code [36 U. S. Stat. at Large, 1091, 1092], § 24, subd. 7; Judicial Code [36 id. 1160, 1161], § 256, subd. 5.) As to the title "The Passion Flower," standing alone, he is not its author and has no property rights as such, either at common law or under the statute, nor do I think any such rights can be acquired in a mere title. (*Outcault* v. *Lamar*, 135 App. Div. 110, 117.)

There are two factors of prime importance upon which the decision of this case must rest. *First*, that the plaintiff has an interest in the spoken drama and especially in its title "The Passion Flower," and *second*, that Schenck under an alleged grant from Herndon is producing a motion picture of substantially the same play under the same title. The writing of the play, its production in Spanish, its copyright in Spanish, its translation by plaintiff and the copyright thereof, its production on the stage under agreement with Herndon, the agreement between Herndon and plaintiff as to motion picture rights, the transfer of such rights by Benavente to Gonzalez and by Gonzalez to Herndon, and the agreement between Herndon and Schenck, are all matters of importance as they throw light on the vital question in the case, viz.: Was the making and production of the motion picture of Benavente's play "La Malquerida" under the title "The Passion Flower" unfair competition with the production of the spoken drama of the same name in which plaintiff had an interest?

Although not the author or inventor of the title, plaintiff did adopt and use it in connection with the play produced upon the stage as his translation, and any attempt by the defendants to use this title either in a motion picture of the play or in any other manner which competed with or injuriously affected the production of the spoken drama was in my opinion a clear violation of plaintiff's right and did constitute unfair competition.

The original author Benavente after his grant to the plaintiff of the right to translate and produce the play on the stage could not use the play in motion pictures or grant the right to use it to others in competition with the spoken drama. (*Manners* v. *Morosco*, 252 U. S. 317.)

Herndon when he obtained from Benavente's assignee an assignment of the world motion picture rights in the play knew, or was legally charged with knowledge, that Benavente was powerless to grant effectively any such rights to be used in competition with the right in the spoken drama already granted to plaintiff. The defendant Schenck was charged with equal knowledge, or at least

with facts sufficient to put him on inquiry. This is clear, because Herndon assigned and transferred to him " the motion picture rights " in the play of which Jacinto Benavente is the author, entitled " La Malquerida," as well as in and to the English translation thereof made by John G. Underhill, entitled " The Passion Flower," and agreed to procure and deliver to Schenck within sixty days Underhill's written consent to the use of the title " The Passion Flower," and Schenck agreed to use the name of the author in his paid publicity and to state upon the film for exposure long enough to be read, that the motion pictures were based upon a play written by the author and translated by plaintiff. Herndon never procured or delivered to Schenck, as agreed, plaintiff's consent to the use of the title " The Passion Flower," but Schenck nevertheless prepared and produced the film under that title. It is apparent, therefore, that neither Herndon nor Schenck acted in good faith.

Of course, these acts of Herndon and Schenck constituted an infringement of plaintiff's copyright, but with that infringement we are not concerned. It is not that which fixes the defendant's liability. The vital thing here is that the motion picture was produced under the same title adopted by plaintiff for the spoken drama. Its production did more than infringe plaintiff's copyright, it violated his common-law right to the benefits to be derived from the production of the spoken drama free from the unfair competition of a motion picture produced under the same title. Herndon's transfer to and Schenck's use of this title with full knowledge of plaintiff's rights in the matter was at least a constructive fraud and entitles the plaintiff to an injunction and also an accounting for all damages and profits. (*Dickey* v. *Mutual Film Corporation*, 186 App. Div. 701.) The mere fact that Herndon has sold the motion picture rights, and took no part in the production by Schenck, constitutes no defense. His acts were an essential part of the illegal transaction which resulted in plaintiff's injury.

Nor do I think there is any impropriety in allowing plaintiff a recovery from the appellants of both damages and profits. A clear distinction must here be borne in mind between the rights of the parties in the play including motion picture rights, and the sole and exclusive right which the plaintiff had in the title " The Passion Flower." Neither damages nor profits can be recovered here solely because of an illegal use of the play, but only because of an illegal use of the title. The result may not be different, but the distinction is clear. No rights which either Herndon or Schenck have acquired in the play or the motion picture rights therein can alter or limit their liability for the invasion of plaintiff's right in

the title. The profits to be accounted for under the judgment are not simply those arising from the production of the motion picture. They involve and the judgment provides for an accounting of any profits which either appellant has obtained by reason of " their unlawful invasion of the rights of the plaintiff." These would include any profit which Herndon made in selling the motion picture rights to Schenck. The appellants should not be permitted to retain the profits arising from their wrong, and plaintiff, the party wronged, be limited solely to his damages measured by his loss of royalties. It is an elementary policy of the law that the wrongdoer shall not profit by his wrong. Appellants had no greater right to use plaintiff's exclusive title " The Passion Flower " than they would have to invest money in their possession belonging to him. Any profit resulting in either case belongs to plaintiff.

I am unable to see that this case differs from any other case of unfair competition, and it seems to be the general rule that for an infringement of a trademark or for unfair competition, plaintiff may recover defendants' profits. (*Singer Mfg. Co.* v. *June Mfg. Co.*, 163 U. S. 169; *Dickey* v. *Metro Pictures Corporation*, 164 N. Y. Supp. 788; *Cutter* v. *Gudebrod Brothers Co.*, 190 N. Y. 252.)

The restraining portion of the judgment, however, is too broad. It restrains not only the motion picture production of the play " La Malquerida " under the title " The Passion Flower," but " any motion picture reproduction of said play with lines, titles or captions in the English language." For the violation of his exclusive right in the title, plaintiff is entitled to an injunction; for a violation of his copyright by the production of the play itself in motion pictures, he can, as I have pointed out, obtain no relief in this court.

The interlocutory judgment should, therefore, be modified by striking out so much of the injunction clause as restrains " any motion picture reproduction of said play with lines, titles or captions in the English language," and as so modified affirmed, with costs.

JAYCOX and MANNING, JJ., concur; BLACKMAR, P. J., reads for a further modification, with whom KELBY, J., concurs.

BLACKMAR, P. J. (dissenting in part):

Even after the contract by which plaintiff granted to Herndon the exclusive right to produce the English spoken drama under the title " The Passion Flower," he retained an interest therein by way of a percentage of the gross receipts. This interest, although small, is a sufficient basis for the action. The judgment of injunction is not founded on any property right in the plaintiff to the production of the motion pictures, for these rights passed from the author,

Benavente, through Gonzalez and Herndon, to Schenck, who owns them. Neither, as Mr. Justice YOUNG points out, had plaintiff any property in the title " The Passion Flower." Nor is the judgment based on the copyright, for this court has no power to enjoin the infringement of a copyright. But the justification for the judgment is the proposition that the production of the motion pictures under the title " The Passion Flower " is an unfair competition with the drama presented on the spoken stage under that title. Whether it is such an unfair competition is, I think, a question of fact; and although the right to be protected seems to me shadowy and unsubstantial, I do not feel inclined to dissent on that ground.

But I cannot concur in the nature and extent of the judgment granted. I propose to consider, *first*, the question of damages and profits as applied to the usual cases of unfair competition in merchandising, and *second*, as to the special facts in the case.

In cases of unfair competition in trade the cause of action rests on the proposition that the defendant by deceit of the purchasing public palms his goods off as those of the plaintiff. He thereby injures the plaintiff, *first*, because the plaintiff loses the sale, and *second*, if the infringing goods are inferior in quality the plaintiff's reputation is injured. The plaintiff is entitled to complete compensation for the wrong. Logically what he is entitled to is damages. But in some cases the difficulty or impossibility of determining damages may result in a failure of justice. To avoid this the profits of defendant are awarded plaintiff; not, however, as an addition to damages, but as a method of ascertaining them. The theory is that if the unjust competitor had not made these profits they would have been enjoyed by plaintiff. Therefore, in law and equity, as in logic, the rule of compensation is damages. Damages may be measured by profits, but they may be more, for the injured party might, if he had secured the trade diverted by the unfair competition, have made greater profits, and he may have been injured in his reputation by the competitor palming off an inferior article on the public. This is the rule which I draw from many reported cases, as applied to unfair competition in merchandising.

But the question before us is different. There is no question of deceiving the public into the belief that a motion picture is a spoken drama. The only possible claim is that the motion picture representation competes with the English-spoken drama by diminishing the attendance at the play. This diminution, reflected in the gross receipts, is the only conceivable injury. What relation to this injury do the profits made by the motion picture production bear? Obviously none. If this case were founded on the infringe-

ment of a copyright, profits might be recovered under the statute, because the defendant is using plaintiff's property. But it is not. The basis of the action is the damages inflicted by unfair competition. The recovery cannot go beyond those damages, and the profits made in the motion picture production have no relation to the amount of damages. The interlocutory judgment should not have decreed an accounting for profits; and in fact the counsel who wrote the complaint seems to have appreciated that the measure of liability was damages, for he did not ask for profits.

I cannot conceive upon what theory Herndon should account to plaintiff for the profits that he made on the sale of the motion picture rights to Schenck. The plaintiff had no interest in those rights. Herndon owned them and made a profit by selling his own property to Schenck. Why should plaintiff have those profits? I can understand how it might be held, in an action framed for that purpose, that Herndon acquired those rights for the joint account of himself and Underhill under the contract of January 2, 1920. If the action were founded on that contract the proper judgment would be that Herndon account to plaintiff for one-half the value of the motion picture rights, or, at plaintiff's election, for one-half of the profits which Herndon made on the sale to Schenck. Incidentally I will say that upon all the facts such a judgment would do complete justice between the parties, and if the pleadings permitted, such a judgment should be rendered. The parties recognized this and had practically agreed on this basis of adjustment in their attempt to settle the case. But the plaintiff would not have it. He claims that the contract was abrogated and insists on the purely artificial claim for an injunction and damages and profits. Plaintiff's claim against Herndon for buying and selling the motion picture rights has no existence except on the confidential relations created by the contract, for plaintiff has not and never had any title to those rights. His only interest in them was that in the United States courts he could enjoin their production in competition with his copyright. This interest, negative in its nature, Herndon's sale to Schenck did not affect.

I think also that the interlocutory judgment should be modified so as to eliminate seeds of error which it seems to me may destroy any final judgment that would be entered thereon. It will be recollected that Underhill does not own the right to produce the drama under the title of " The Passion Flower," but only a small royalty upon the gross receipts — call it ten per cent, although it is less. The reasonable interpretation of the interlocutory judgment would be that Underhill is entitled to that portion of the profits and damages which bear the same relation to the whole

as his percentage of the gross receipts bears to the whole; or it might possibly be interpreted to mean that Underhill is entitled to all. The latter interpretation appears to me unquestionably erroneous and should be avoided by the referee to whom the matter is referred. Such interpretation would give to Underhill not only his percentage of the profits and damages, but also Herndon's, and then would compel Herndon to account for the whole. I advise recasting the interlocutory judgment so as to avoid an erroneous interpretation.

Again, I can find nothing in the interlocutory judgment which authorizes a recovery of the profits which Herndon made in selling the motion picture rights to Schenck, as suggested in the prevailing opinion. The action, as we are all agreed, is for unfair competition. The profits Herndon made in selling the motion picture rights to Schenck have no relation to unfair competition, and, therefore, I think that those profits were not within the purview of the interlocutory judgment.

I, therefore, dissent from the affirmance and think the judgment should be modified in accordance with this opinion.

KELBY, J., concurs.

Interlocutory judgment modified in accordance with opinion by Mr. Justice YOUNG, and as so modified affirmed, with costs of this appeal to the plaintiff.