JOHN G. UNDERHILL, Respondent, *v.* JOSEPH M. SCHENCK, Appellant, Impleaded with RICHARD G. HERNDON and Another, Defendants.

Second Department, April 27, 1923.

Contempt — proceedings to punish defendant for contempt for not complying with interlocutory judgment and order of referee to file account — defendant estopped to deny jurisdiction of court on ground that he had not been served with decree or order of referee — defendant guilty of contempt under Judiciary Law, § 753, subd. 2.

In proceedings to punish the defendant for contempt based on his refusal to comply with an interlocutory judgment directing him to account and with the order of a referee appointed thereunder, directing him to file the account within a certain time, defendant is estopped from denying the jurisdiction of the court on the ground that he was not personally served with the decree or with the order of the referee and he was properly adjudged guilty of the contempt under subdivision 2 of section 753 of the Judiciary Law, since it appeared that while he was not actually served with the judgment or the order he knew of the entry of the judgment and his attorney knew of the making of the order by the referee and at no time during the several hearings before the referee was any suggestion made that the court lacked jurisdiction to proceed to enforce the judgment; that while the proceedings before the referee were pending the defendant commenced an action against the plaintiff in which he attached to his complaint, as an exhibit, a copy of the interlocutory judgment, and in which action he sought to obtain injunctive relief against the enforcement of the interlocutory judgment.

APPEAL by the defendant, Joseph M. Schenck, from an order of the Supreme Court, made at the Kings Special Term and entered in the office of the clerk of the county of Kings on the 24th day of January, 1923, adjudging the said defendant in contempt of court.

*Almet F. Jenks* [*Gustavus A. Rogers, Harry L. Kreeger* and *Bertram S. Nayfack* with him on the brief], for the appellant.

*Paul Bonynge,* for the respondent.

KELLY, P. J.:

The power to enforce its judgment is inherent in the court, otherwise the judgment is futile. The Legislature could not deprive the court of this inherent power and in my opinion has not attempted to do so. In the Judiciary Law (§ 753) it is declared that a court of record has power to punish a neglect or violation of duty, or other misconduct, by which a right or remedy of a party to a civil action or special proceeding pending in the court may be defeated, impaired, impeded or prejudiced in either of certain specified cases. One of the cases (Subd. 2) is where a party to the action

or special proceeding is guilty of any deceit or abuse of a mandate or proceeding of the court. Another (Subd. 8) is where an attachment or any other proceeding to punish for contempt has been usually adopted and practiced in a court of record, to enforce a civil remedy of a party to an action or special proceeding in that court, or to protect the rights of a party.

The defendant, appellant, Schenck, charged with refusal to obey the order of the referee that he should file and serve the account directed by the interlocutory judgment on or before August 1, 1922, argues that the court was without jurisdiction to punish his conceded disobedience of the judgment and order of the referee, because, he says, he was not personally served with the decree or with the order of the referee.

Upon the record before the court, it seems to me that the defendant if not actually guilty of deceit has abused the mandate of the court, refused to obey the judgment and the order of the referee made in pursuance of the judgment, and that he still refuses to obey the judgment and order.

It is true that there is no proof that he was actually served with the interlocutory judgment or with the referee's order. That he knew of the entry of the judgment is not denied. He was present at the trial and had testified as a witness. He makes no affidavit in answer to the charge that he has refused to obey the mandate of the court. His attorney makes affidavit on October 26, 1922, that he " is now in Europe, and has been for about two months." But he was in the city of New York in August, 1922, and the order of the referee on July 12, 1922, directing him to file the account by August first was made on the express consent of his attorney who asked for a delay until that date to enable him to prepare the account. In answer to the demand of plaintiff's attorney that the account be filed, Mr. Schenck's attorney, Mr. Neuman, said: " That is a request, Mr. Referee, which Mr. Bonynge makes to you. The Referee: Do you want to be heard before I rule on it? Mr. Neuman: No, I agree with that. I feel that this request is an absolutely proper request, but whether or not I can have it finished by that day, I don't know. My client is in the West, and I expect him back within a few weeks, but I think the figures are available in the New York office." The referee then directed that the account be filed by August 1, 1922. No suggestion was made of lack of jurisdiction or that personal service of the interlocutory judgment on defendant was necessary.

In fact the defendant had applied for and obtained a stay of proceedings under the judgment, pending his appeal therefrom

to this court, and had filed an undertaking in the sum of $25,000 as a condition for granting the stay. The appeal had been argued on January 6, 1922, and the judgment was modified and affirmed by this court on April 17, 1922. ( *Underhill* v. *Schenck,* 201 App. Div. 46.)

The referee having directed the filing of the account on or before August 1, 1922, plaintiff was given ten days thereafter in which to file objections, and the reference was adjourned to September 19, 1922.

Mr. Schenck did not file his account by August first. As already suggested, it appears from the affidavit of his attorney that he was in New York city during the month of August when he might have been personally served with copies of the judgment and order of the referee if any suggestion had been made that such service was necessary or desirable. On September nineteenth, the adjourned day of the reference, he had failed to file the account, but appeared by his attorneys, Messrs. Neuman & Newgass, and by Mr. Rogers as counsel. Mr. Rogers stated to the referee that at a conference between counsel the day before, September eighteenth, he had advised that for the present no account be filed but that application be made for a further adjournment of the proceedings for two or three weeks to enable Mr. Schenck, or his attorneys and counsel, to institute a new action for injunctive relief " which if we are successful in obtaining, will make the filing of this account an idle ceremony." The filing of the account had been directed by a judgment of the Supreme Court after a protracted trial, and the judgment had been affirmed upon appeal. Mr. Rogers said: " The defendant is amply responsible. There has been a bond filed here which secures the plaintiff, and there may be great harm come to us if our application be not granted, which is that we have an extension of two or three weeks, whereas no real or substantial harm can come to the other side if the adjournment be granted." The attorney for the plaintiff protested against any further adjournment, and stated that on August 21, 1922, Mr. Schenck's attorney, Neuman, had informed him that the defendant was in the city " and had only recently returned, but that his office was working on it then, and that I would receive it within a week's time." He asked that defendant's default be noted and the matter certified to the court for appropriate action in the premises. The referee called Mr. Rogers' attention to the fact that the order made required filing of the account by August first. Mr. Rogers repeated his request for an extension of time. The referee said to him, " You ask for an adjournment. Is it not your intention to file an account? " Mr.

Rogers repeated that he intended to ask the court to enjoin the plaintiff from proceeding under the judgment, and after some colloquy the referee said: " At the end of the two weeks, you will want — Mr. Rogers (interrupting): Pardon me. We will be in this position: either we will be here with an application in court to enjoin the plaintiff from proceeding under his judgment, or we will be in the position where the Court has refused us that relief. *If that relief is refused to us, why, naturally, we will have to file our account.* The Referee: How long after that will it take you to file your account? Mr. Rogers: Well — The Referee: I will not grant the time with the expectation that at the end of the time you will come in and say that we have been beaten in our application; now, we want time in which to prepare the accounts. If you will stipulate that you won't ask for a further adjournment to prepare the accounts in the event that you are beaten, I am inclined to grant the defendant the two weeks. In other words, I think if you are beaten on your application that you should have the accounts here. Mr. Rogers: May I say, we will be glad to adopt your Honor's suggestion, but may I suggest that the time be made three weeks instead of two weeks in order to give us ample time to get into Court and get a decision, because I don't think this thing will be promptly decided."

Plaintiff's attorney again objected to any delay, but the referee announced his intention to grant defendant's request. He said: " In the event that you are beaten in your application, will you be prepared to go on in three weeks? Mr. Rogers: In the event that we will be unsuccessful, we will be bound to go on. The Referee: As a practical proposition will you have the accounts ready? Mr. Rogers: I will say this to your Honor. In order to expedite the matter, I shall direct the defendant's representative to have the accounts under way, so that in case we are beaten by the Court, the accounts will be ready in three weeks for filing. The Referee: Will you stipulate to that effect, that in the event of a decision against you, that you will be prepared to go ahead three weeks from to-day? Mr. Rogers: I want to be sure that I am not making this stipulation, which I am quite willing to make, precluding any right of appeal on our part or a review of the decision of the Court in denying our application. With that understanding, of course — The Referee: Then if you appeal from that we might be a year before we get under way, and then you might be beaten, and .we will have lost all that time. Mr. Rogers: No, your Honor. I will make the stipulation just as your Honor has suggested it, but reserving the right, however, to apply to the proper Court for a stay of these

proceedings in the event that we take timely appeal. In other words, we will not ask your Honor for any further adjournment, but I reserve the right to make the application to the Court for a stay pending the appeal, as we would in any other proceeding. I want to be fair with your Honor; at the same time, I do not want to cut off any of the defendant's rights."

The referee finally granted three weeks' adjournment to defendant over plaintiff's objection and exception.

On October 10, 1922, the parties again attended before the referee and Mr. Rogers announced that an action had been commenced by defendant Schenck against the plaintiff Underhill and others to enjoin the enforcement of the judgment in *Underhill* v. *Schenck* and that a motion for an injunction *pendente lite* had been noticed for October sixteenth, and he asked that the reference be further adjourned to October seventeenth.

The referee upon plaintiff's protest refused any further adjournment of the filing of the account and certified the proceedings to the Supreme Court for appropriate action. The reference was adjourned to October 24, 1922.

In his amended complaint in the new action to enjoin the proceedings in the case at bar, Mr. Schenck affirmatively alleged the fact of the trial, the interlocutory judgment, his appeal therefrom and the modification and affirmance. And to obtain the relief prayed for he attached to his amended complaint as separate exhibits, a copy of the interlocutory judgment, a copy of the opinion of the trial justice, a copy of the opinion of this court and of the order of affirmance. He asked the court to vacate the judgment in this action and to restrain Underhill from proceeding with the reference. His attorney in that action, Mr. Rogers, made affidavit that Schenck " has been ordered to appear before the Referee on October 10th, 1922, in order that the taking of testimony before the Referee may be begun." His attorney, Mr. Nayfack, made affidavit that " The plaintiff herein Schenck as one of the defendants in the case of *Underhill* v. *Schenck et al.*, has been ordered to appear before a referee in order to commence a long reference as to the profits which he derived from the production of the motion picture under the title ' The Passion Flower.' "

Thus it appears that for his own purposes and to obtain equitable relief to which he asserted he was entitled, Mr. Schenck began his action in the Supreme Court, and produced and submitted to the court, as an exhibit attached to his complaint, the identical interlocutory judgment which he now says was never served upon him, and for his own purposes he alleged the proceedings before

the referee. He said nothing about lack of jurisdiction. On the contrary, he pleaded the judgment and the proceedings before the referee as valid and binding unless enjoined by the court in the new action. And when by his attorney he came before the referee in July, 1922, asking for time in which to file his account which was granted, and when later he asked for additional time and stipulated to file his account if he was unsuccessful in his attempt to obtain injunctive relief, he said nothing about lack of jurisdiction. He obtained the adjournments upon the assertion of his counsel that he was bound to file the account and in consideration for the delay granted he promised to file it if the temporary injunction was denied.

All these facts were before the learned justice at Special Term when he granted the motion to punish Mr. Schenck for contempt of court. The motion for an injunction *pendente lite* in the new action was argued at the same time and before the same justice, who denied it, filing an opinion covering both motions, in which he said: " The manner in which matters were conducted by this defendant before the referee was such as to lead to the conclusion that he was trifling with the court and that he had not the slightest intention of complying with the judgment in so far as it required him to account." With this conclusion of the learned justice at Special Term I am forced to concur. Upon appeal to this court the order denying an injunction *pendente lite* was unanimously affirmed. (*Schenck* v. *Underhill*, 205 App. Div. 162.)

In view of the actions and procedure of Mr. Schenck heretofore detailed, I think he is estopped from questioning the jurisdiction of the court upon the motion to punish him for contempt. He had full knowledge of the judgment and of the proceedings before the referee and he cannot be allowed to plead such knowledge for the purpose of obtaining adjournments and injunctions and when he has come to the end of his rope to turn about and deny the facts. Such procedure should not be countenanced.

The proceeding is to enforce a civil remedy; the defendant has already had the opportunity of contesting his liability to perform what is directed by the judgment; the proceeding is, in effect, but an execution of the judgment. (*Pitt* v. *Davison*, 37 N. Y. 235.) Under the old practice in the Court of Chancery a party might be punished for contempt when he knowingly violated an order or decree of the chancellor although at the time it had not been served upon him or in fact entered. (*Hull* v. *Thomas*, 3 Edw. Ch. 236; *People ex rel. Morrison* v. *Brower*, 4 Paige, 405; *Stafford* v. *Brown*, Id. 360; *M'Neil* v. *Garratt*, 1 Craig & Phillips, 98; Com. Digest Chancery [D 8], Injunction, notes a, b, c, d; *St. John's*

*College, Oxford,* v. *Carter,* 4 Myl. & C. 498.) In *Hull* v. *Thomas*
(*supra*) the vice-chancellor said: "In *Osborne* v. *Tenant,* 14 Ves.
136,* a motion was made for an injunction while the defendant and
his attorney were in court; but they were absent when the order
was pronounced. 'If these parties,' said the Lord Chancellor,
'by their attendance in court were apprised, that there was an
order, that is sufficient; and I cannot attend to a distinction so
thin, as that persons standing here until the moment the Lord
Chancellor is about to pronounce the order, which, from all that
passed, they must know will be pronounced, can, by getting out
of the hall at this instant, avoid all the consequences.' " It was
sought to enforce a different rule in the courts of law (*Coddington* v.
*Webb,* SANFORD, J., Special Term, 4 Sandf. [6 N. Y. Super. Ct. Rep.]
639), but the injury to parties was manifest and the court at
General Term adhered to the rule of the Chancery Courts and in
1853 adjudged certain of the aldermen in New York city in contempt
for violating an injunction of which they had knowledge although
not served upon them. (*People* v. *Compton,* 1 Duer [8 N. Y. Super.
Ct. Rep.] 512; see opinion BOSWORTH, J., at Special Term, p. 553;
affd. at p. 570.) In *People ex rel. Platt* v. *Rice* (144 N. Y. 249) the
State Board of Canvassers was adjudged in contempt for knowingly
violating an order for mandamus before the writ was issued or served
and it was objected that they could not be adjudged in contempt,
but the Court of Appeals said through Judge GRAY: "That is
immaterial, as it concerns the question of whether the defendants
have deliberately done something which they knew the court
had decided they should not do and had thus neglected, or violated
a duty, which the court would have, through the form of a writ
prescribed by the statute, enjoined upon, or have commanded
them to perform, had the stipulation, which they made upon
the granting of the court's order for the writ of mandamus, not
prevented the actual issuance of that writ. What constitutes the
contempt here is that the defendants, knowing of the order for
the issuance of a peremptory writ of mandamus, have done the
very thing which the issuance of the writ was intended to absolutely
prevent, and have thus contemned and defeated the will of the
court. It is no new principle that a person may be held guilty
of the offense of contempt, for having done an act after the court
had decided to enjoin its doing; although that decision had not
been formally and technically carried out, or formulated, into an
order or writ. (See *Hull* v. *Thomas,* 3 Edw. Ch. 236, and English
cases cited there. Also, the remarks of JOHNSON, J., in *People* v.

* *Hearn* v. *Tennant* (14 Ves. Jr. 136).— [REP.

*Sturtevant,* 9 N. Y. at p. 278.) " In *People ex rel. Stearns* v. *Marr* (181 N. Y. 463) the members of a labor union were adjudged in contempt for violation of an injunction. Judge VANN said: " ' This court has upheld proceedings in the Supreme Court, punishing parties for contempt in violating an injunction who had knowledge of it, though not served, and also the agents and attorneys of parties having like knowledge of the granting of the order, though it was imperfectly or irregularly served.' (*Daly* v. *Amberg,* 126 N. Y. 490, 496, citing *Abell* v. *N. Y., L. & W. R. R. Co.,* 18 Wkly. Dig. 554; affirmed, 100 N. Y. 634; *Koehler* v. *Farmers & Drovers' National Bank,* 6 N. Y. Supp. 470; affirmed, 117 N. Y. 661. See, also, *People ex rel. Platt* v. *Rice,* 80 Hun, 437; 144 N. Y. 249; *Hull* v. *Thomas,* 3 Edw. Ch. 236; *People ex rel. Morrison* v. *Brower,* 4 Paige, 405; *Livingston* v. *Swift,* 23 How. Pr. 1; *Hearn* v. *Tennant,* 14 Ves. Jr. 136.)" In *People ex rel. Munsell* v. *Court of Oyer & Terminer* (101 N. Y. 245) the Court of Appeals refers to the distinction between criminal and civil contempts and says (at p. 250): " The private or civil contempt might go beyond the statutory enumeration and include also what was usual or permissible at common law. * * * So that, for the criminal contempt, we may look only to the statute, while for the private or civil contempt we may resort, if need be, to the common law." In the case at bar the defendant not only knew of the mandate of the court contained in the judgment, and knew of the order of the referee, but asserting this knowledge, he has applied for and obtained the favor of the court by way of an order staying the judgment upon appeal and extension of time to file the account from the referee upon his assent to the referee's order and his stipulation to obey it if his application for injunctive relief was denied, and expressly alleging these facts, he asked the court for further delay by injunction. The court has denied his latest request and this court has affirmed such denial. I think it is too late to assert that the court had no jurisdiction of the subject-matter and of the defendant.

I recommend affirmance of the order, with ten dollars costs and disbursements.

MANNING, KELBY, YOUNG and KAPPER, JJ., concur.

Order adjudging defendant Schenck in contempt of court affirmed, with ten dollars costs and disbursements.