In the Matter of the NEW YORK STATE LABOR RELATIONS BOARD, Petitioner, against GEORGE B. WHEELER, INC., Respondent.

In the Matter of THE PEOPLE OF THE STATE OF NEW YORK on the Relation of NEW YORK STATE LABOR RELATIONS BOARD, Petitioner, against GEORGE B. WHEELER, INC., GEORGE B. WHEELER and FELIX W. BERNHAGEN, Respondents.

Supreme Court, Special Term, Kings County, December 3, 1941.

*Daniel Kornblum [William E. Grady, Jr.,* of counsel], for the petitioner.

*Townsend, Kindleberger & Campbell [Howard C. Campbell* of counsel], for the respondents.

LEWIS, J.   This is a motion to punish George B. Wheeler, Inc., George B. Wheeler and Felix W. Bernhagen for civil and criminal contempt.   The contempt arises from an alleged refusal to obey an order of this court dated March 5, 1940, which enforces in whole an order of the State Labor Relations Board of July 21, 1939.   In lieu of affidavits, the parties agreed upon argument to submit a transcript of the hearings before the Board in May, June and December, 1940.   Those hearings were instituted by the Board for the purpose of determining for itself whether there had been compliance and whether a contempt proceeding should be brought.   The hearings were conducted before a trial examiner, and respondents, as well as the Board and union, were represented by counsel.   The Board, at the termination of the hearings, issued a so-called supplemental decision containing its findings on the question in

issue. That decision, of course, has no binding effect here but is submitted as the Board's report of the facts.

It is conceded that between July 21, 1939, and March 5, 1940, George B. Wheeler, Inc., and George B. Wheeler did not take any steps to comply with the Board's order. Respondents claim, however, that there has been compliance since service of a copy of the court's order of March fifth.

On December 14, 1939, George B. Wheeler took over the business of the corporation. Mr. Wheeler has conceded that such change does not affect in any way whatever liability might arise.

After reading the somewhat voluminous record, I have concluded that the respondents have willfully disregarded the order of this court. While apparent non-compliance in individual instances might plausibly be explained, it is a reflection upon respondents' good faith that there is need for such explanation for almost every particular of the Board's order. The record as a whole discloses a ready adoption by respondents of any pretext to thwart the court's mandate ordering full compliance with the order of the Board.

The order of the Board required that " the Respondent George B. Wheeler, Inc., and its officers, agents, successors and assigns bargain collectively with Bleachers, Dyers, Finishers & Printers, Local 1790, as the exclusive representative of all Respondent's employees, excluding the supervisory employees and the clerical help, with respect to rates of pay, wages, hours of employment and other conditions of employment." (¶ 2 [a].) Although Mr. Wheeler through his attorney negotiated with the union for the ostensible purpose of drawing a contract, the negotiations were not carried on in good faith. The Board's order required the corporation to bargain collectively with the union as the exclusive representative of all the employees excluding the classes specified. Mr. Wheeler, however, insisted throughout that the terms of any contract should be limited in effect to members of the union and should not apply to other employees. His unwillingness to agree or compromise on any material matters, such as minimum wages, is a further indication of bad faith.

The Board's order also required that John McNamee, Patrick Lyons, William Sullivan and James Campbell be offered " immediate and full reinstatement to their former status as employees of the respondent without prejudice to any rights and privileges previously enjoyed by them." (¶ 2 [b].)

The record fails to sustain respondents' claim that the natural inference from John McNamee's testimony is that he gave up his job at the plant. He filled out a yellow form containing a new set of rules of the employer and was put to work on April 12, 1940, for

an hour and twenty minutes. When he returned on the following Monday as directed, he asked for the return of the paper he had signed, but was told that it was in New York and that there was no work. At no other time was he offered reinstatement to his former position as an all-around man at the plant. Mr. Wheeler's version of what happened was that on Monday, April fifteenth, McNamee called at the plant and asked for the paper he had signed. He was told that the paper was in New York, whereupon McNamee said he had changed his mind and walked away. There has been here only a perfunctory and illusory compliance with the order.

Patrick Lyons was re-employed on April 18, 1940, and worked for an hour. He was next called for work on May 16, May 24, and May 27, 1940. On May twenty-eighth he was supposed to report for work but was ill and telephoned Mr. Bernhagen, the general manager, that it would be impossible for him to work that day. He was told that he did not have to return and that there was someone else for his job. Mr. Lyons' inability to attend work on the twenty-eighth on account of illness was not questioned. His discharge under the circumstances was not justified.

It is undisputed that William Sullivan has not been offered any work at all by respondents, although he testified that he has been ready at all times to assume his former position. That he has employment elsewhere does not deprive him of his right to reinstatement pursuant to the Board's order. In fact, he testified that he would rather work at Wheeler's because it was a steady job. Respondents state that he has not been reinstated because there had been no work at the plant for him since March 21, 1940. Before the strike Sullivan worked at the boil-off helping the boil-off man, Paul Graffeo. It appears from the records that one of the duties assigned to Joseph Punturo, hired after the strike, was to help on the boil-off. Although it does not appear how much time Punturo spent helping at the boil-off as compared with his other duties, nevertheless in part he was doing work which could have been performed by Sullivan.

The Board does not urge the reinstatement of James Campbell since he has received employment elsewhere substantially equivalent to his former work. However, it urges enforcement of respondents' duty to make him whole for the loss of wages suffered from October 26, 1938, to May 23, 1940, when he testified before the Board. The amount due will be discussed hereafter.

The order of the Board further provided:

" Respondent George B. Wheeler, Inc., and its officers, agents, successors and assigns, shall: * * *

" To the extent that work is available and is being performed by persons not employed on October 27, 1938, and hired since that time, offer to those employees who were employed on October 26, 1938, and who went on strike on October 27, 1938, immediate employment in order of seniority in positions equivalent to those which they held at the time of the severance of their employment under conditions of employment enjoyed by them at that time, dismissing, if necessary, all those persons not employed on October 27, 1938, and hired since that time, all the remainder of said employees for whom employment is now not available to be placed on a preferential list to be offered employment under conditions above described on the basis of seniority in their respective classifications when additional labor is needed and before the hiring of any other employees, the Respondent to inform the employees or their representatives of such necessity as soon as it arises." (¶ 2 [c].)

The Board urges that work was available but not given to the following employees in the order of their seniority: Patrick DeLauro, Emanuel Tripoli, Joseph Tucciarone, Robert Edgerley, Paul Graffeo and Charles McEneaney.

Patrick DeLauro was put to work on May 6, 1940. On May twentieth, when he was again called, Wheeler discharged him because of an alleged improper cutting of certain goods. The evidence of the practice as to cutting was not clear. It seems, however, that there was no one size for cutting and that in the particular case DeLauro had not been given instructions for cutting. Whether he should have inquired of Agnes Cramer before cutting cannot be determined on the record before me; but in view of the small amount of damage caused (ten dollars) and the absence of any proof as to other alleged incompetence or wrongdoing on the part of DeLauro, his discharge seems to be another instance where Wheeler has sought a pretext to avoid compliance with the court's order.

Emanuel Tripoli has not been offered any employment at the Wheeler plant since the strike, the employer claiming that there has been no work for him. There is insufficient evidence to establish the existence of available work for Tripoli at the time of the hearings before the Board in May, June and December, 1940. However, the work done by Harold Camp from the time of the strike until March 14, 1940, was similar to that done previously by Tripoli. The latter should have been given the work assigned to Camp.

Respondents apparently base their failure to re-employ Joseph Tucciarone on the ground that he did not ask for reinstatement. They state that Tucciarone " comes under the group specified by Mr. Gordon who would write to Mr. Wheeler or Mr. Bernhagen

if he wanted to return to work. He never wrote. He did not testify at the compliance hearings." Mr. Gordon is the manager of Local 1719. The testimony referred to by the respondents is that on March 14, 1940, Mr. Gordon told Mr. Wheeler and Mr. Bernhagen that the men who had not reported that morning for employment, who still wanted to return, would write to Mr. Bernhagen and to Mr. Wheeler advising them of such desire. Tucciarone was not one of the employees who reported that morning. In view of this statement of Gordon, the respondent might honestly have understood that, in the absence of any word from Tucciarone, the latter was not interested in re-employment. Furthermore, Tucciarone did not appear to testify that he was ready and willing to accept re-employment at Wheeler's. Even assuming that he should have been re-employed on July 28, 1939, his losses cannot be determined, for there is no evidence as to the amount he might have earned elsewhere.

Respondents claim that Robert Edgerley refused employment when offered to him. Edgerley testified that Mr. Wheeler wanted him to sign a set of rules before Wheeler would hire him and that he refused. Never at any time before the strike had he been asked to sign a similar paper. In view of the Board's order for reinstatement, his refusal to sign that paper was not unreasonable. Whether Edgerley refused to work for George B. Wheeler, as distinguished from the corporation, George B. Wheeler, Inc., cannot be resolved by a mere perusal of the testimony. In any event, I do not believe that respondents acted with complete good faith. The Board's order refers to George B. Wheeler, Inc. Edgerley thus might easily have been a little confused and perhaps wary of the change of business to George B. Wheeler, particularly in view of the demand for his signature to a new set of rules. Under such circumstances, Wheeler should have made a reasonable effort to explain that his obligations were no different from those of the corporation.

The situation with regard to Paul Graffeo is substantially the same as with Tucciarone. Here too the record is inadequate to establish any violation of duty by respondents. The Board, which has computed the loss in wages of the various employees affected by its order up to March 14, 1940, admits that Paul Graffeo by reason of employment elsewhere has suffered no loss.

Respondents urge that Charles McEneaney quit voluntarily; that his replacement, therefore, was justified. However, McEneaney testified that he had some experience with dyeing veilings and discontinued work on May 25, 1940, only because of Wheeler's insistence that he would be responsible for any damage caused to the goods. Robert Edgerley and Frank Graffeo also

testified that the management never asked that employees reimburse it for damaged goods. It was reasonable, therefore, for McEneaney to discontinue work when such demand was made upon him. Respondents cannot rely upon that "voluntary" withdrawal as ground for replacement. Francis Rohan worked on the dye box and although inferior in seniority to McEneaney was subsequently employed. As of March 14, 1940, McEneaney, however, had not suffered financial loss.

The Board's order required that John McNamee, Patrick Lyons, William Sullivan and James Campbell be made whole "for any loss of pay they have suffered by reason of their discharge by paying to each, respectively, a sum of money equal to that which each would normally have earned as wages, computed at the wage rate each was paid at the time of his discharge, during the period from the date of their respective discharges to the date of their reinstatement, less any amount they have actually earned, respectively, in other employment, if any, during such period." (¶ 2 [d].) It also ordered payment to each striking employee "who upon application either personally or through his bargaining representative is not reinstated by Respondent in accordance with all the terms of this order, beginning 7 days from the time such reinstatement should take place in accordance with the terms of the order, a sum equal to that which each of them would normally have earned as wages from the date of any such refusal of their application to date of reinstatement less the amount, if any, which each respectively may have earned during said period." (¶ 2 [e].)

Except in the case of James Campbell and Emanuel Tripoli, there is no dispute concerning the amount which the various employees earned elsewhere. The computations of the Board and of the respondents cover the same period: in the case of the four discharged employees, from October 26, 1938, the date of their discharge, until March 14, 1940, when the plant was closed for a week and all employees taken on since the strike were allegedly discharged. In the case of the other striking employees, from July 28, 1939, until March 14, 1940. The Board and respondents, however, used different methods of computing the amount each employee would have earned at the plant during those periods. Wheeler stated that he made his computations after he had gone through the bills to his customers, figured the yardage processed, and which of the employees would have done the work on any particular day on a particular job. The Board, on the other hand, conducted its own examination of Wheeler's books and records. It then determined from the records the amount of work done by men holding positions equivalent to those of the discharged and

striking employees during the periods in question. That work was regarded as available work which could have been done by the employees covered by the Board's order and the Board applied their respective regular rate of wages to such work. The difficulty with this method is that it does not appear that the work of the substituted employees was precisely the same as that done previously by the strikers. However, any method of determining back pay must be in some measure speculative. The method utilized by the Board, as contrasted with Wheeler's, affords an objective method which can be checked by reference to the employer's time sheets and to the transcript of testimony concerning the kind of work done by striker replacements. In checking the time sheets, I have found that in most cases the Board has not deducted those days on which it appears that the employees substituted for the strikers did not work. In the absence of any other explanation, it must be assumed that those represent days when no work was available and on which likewise the discharged and striking employees in question would not have worked. Making due allowance for those days, I find that the following is due: To John McNamee, $275; to Patrick Lyons, $200; to William Sullivan, $220; to James Campbell, $385; to Patrick DeLauro, $315; to Emanuel Tripoli, $625; to Robert Edgerley, $270. In the case of Emanuel Tripoli, the record discloses an approximate earning elsewhere of seventy-five dollars during the period in question, for which credit has been given.

Disobedience of an order of this court enforcing an order of the State Labor Relations Board may constitute a civil and criminal contempt. (See *Matter of Boland* v. *Parisi*, 259 App. Div. 847; *Matter of New York State Labor Relations Board* v. *Kleen-Rite Process Corp.*, 258 id. 59, and original order in Record on Appeal.) The corporation and George B. Wheeler, its president and owner of ninety per cent of the stock as well as successor in interest to its business, are clearly subject to punishment. It is claimed, however, that Bernhagen cannot be adjudged guilty of contempt because he is named as a respondent for the first time in the title to the order to show cause granted July 16, 1941; he was not a party to the original proceedings before the Board; the order of this court dated March 5, 1940, does not mention him by name; and he never was served with a certified copy of the same. Respondents rely upon *Matter of New York State Labor Relations Board* v. *Kleen-Rite Process Corp.* (*supra*) and *Matter of Spector* v. *Allen* (281 N. Y. 251). In the *Kleen-Rite* case the Appellate Division merely said that the court below did not acquire jurisdiction to punish the appellant for contempt because " he was not

made a party to the proceeding by any process directed against him. (Judiciary Law, § 751.) " The proceeding referred to is the one to punish for contempt. Bernhagen was made a respondent on this motion to punish for contempt.

In the *Spector* case the court held that the respondent could not be punished for criminal contempt because he had received no subpœna requiring him to produce the particular paper, the nonproduction of which was made the basis for the contempt. He had not disobeyed any mandate of the court.

Section 750 of the Judiciary Law provides that a court of record has power to punish for a criminal contempt a person guilty of willful disobedience to its lawful mandate. Such power exists even in the case of a person not a party to the action or proceeding and upon whom the order of the court has not been served, where that person has knowledge of the order and willfully aids in disobeying it. (*People ex rel. Stearns v. Marr*, 181 N. Y. 463.) Likewise, in a civil contempt it is not necessary that the person sought to be punished has been served with the mandate in question. (*Underhill v. Schenck*, 205 App. Div. 182.) In *People ex rel. Stearns v. Marr* (*supra*) the court relied upon many cases which involved civil contempts. (See, for example, *Daly v. Amberg*, 126 N. Y. 490; *People ex rel. Platt v. Rice*, 144 id. 249, affg. 80 Hun, 437; *Koehler v. Farmers' & Drovers' Nat. Bank*, 6 N. Y. Supp. 470; affd., 117 N. Y. 661.) It said: " While there is a distinction in the nature of civil and criminal contempts, there is but slight difference in the procedure to punish and no requirement peculiar to either as to the personal service of the order, as distinguished from the actual knowledge of its existence and contents, however acquired." (*People ex rel. Stearns v. Marr, supra*, 470.)

The *Underhill* case (*supra*) involved a party to the action. As in the case of a criminal contempt, however, a person who is not a party to the proceeding may be punished if he acts in combination with the party and knowingly violates the court's mandate. Section 753 of the Judiciary Law, which sets forth " Contempts punishable civilly," provides:

" A court of record has power to punish, by fine and imprisonment, or either, a neglect or violation of duty, or other misconduct, by which a right or remedy of a party to a civil action or special proceeding, pending in the court may be defeated, impaired, impeded, or prejudiced, in either of the following cases: * * *

" 3. A party to the action or special proceeding, an attorney, counsellor, *or other person*, for the nonpayment of a sum of money, ordered or adjudged by the court to be paid, in a case where by law execution can not be awarded for the collection of such sum;

*or for any other disobedience to a lawful mandate of the court.*" (Italics supplied.)

There can be no question here of Bernhagen's knowledge of the order of Mr. Justice LOCKWOOD of March 5, 1940, or of his power to comply in certain respects with the order of the Board. He was general manager of the corporation and continued as general manager when the business was taken over and operated by Wheeler individually. He was in charge of hiring and discharging and interviewed the men who came in after the strike. He also had charge of the books and records of the plant.

I find that George B. Wheeler, Inc., George B. Wheeler, and Felix W. Bernhagen have willfully failed to comply with the order of this court of March 5, 1940, which enforced the Board's order of July 21, 1939. Specifically they have failed to

(1) " Bargain collectively with Bleachers, Dyers, Finishers & Printers, Local 1790, as the exclusive representative of all Respondent's employees, excluding the supervisory employees and the clerical help, with respect to rates of pay, wages, hours of employment and other conditions of employment."

(2) " Offer to John McNamee, Patrick Lyons, William Sullivan and James Campbell immediate and full reinstatement to their former status as employees of the Respondent without prejudice to any rights and privileges previously enjoyed by them."

(3) " Make each of the aforesaid employees whole for loss of pay they have suffered by reason of their discharge."

(4) " Offer employment in positions equivalent to those which they held at the time of the severance of their employment to the following men, although work was available for them: Patrick DeLauro, Emanuel Tripoli, Robert Edgerley, Charles McEneaney."

. (5) " Pay to Patrick DeLauro, Emanuel Tripoli and Robert Edgerley what they would have earned from July 28, 1939, in accordance with paragraph 2 (e) of the order of the Board of July 21, 1939."

Such failure has defeated, impaired and impeded the rights of John McNamee, Patrick Lyons, William Sullivan, James Campbell, Patrick DeLauro, Emanuel Tripoli and Robert Edgerley, and each respectively has suffered an actual loss as follows: John McNamee, $275; Patrick Lyons, $200; William Sullivan, $220; James Campbell, $385; Patrick DeLauro, $315; Emanuel Tripoli, $625; Robert Edgerley, $270.

I, therefore, find the respondents guilty of civil contempt of this court and, pursuant to section 773 of the Judiciary Law, fine them jointly and severally the sum of $2,290, to be paid to the State Labor Relations Board on behalf of the aggrieved employees as specified. In pursuance of section 774 of the Judiciary Law,

I commit George B. Wheeler and Felix W. Bernhagen to imprisonment for six months or, if the aforesaid fine is paid before the expiration of the six months, until such time of payment. I also find that the respondents are guilty of a criminal contempt of this court in that they have willfully and contumaciously disobeyed the order of this court of March 5, 1940, as indicated above. Pursuant to section 751 of the Judiciary Law I fine the respondents severally the sum of $250 for the commission of said criminal contempt. Settle order on notice.